Paul E. BROUILLARD, et al.

v.

Verna G. ALLEN, et al.

Supreme Judicial Court of Maine.

Argued Nov. 19, 1992.
Decided Jan. 21, 1993.

Peter S. Roy (orally), Roy & Kesaris, Ellsworth, J. Michael Conley, Conley, Haley & O'Neil, Bath, for plaintiffs.

Harold J. Friedman, Brian L. Champion (orally), Friedman & Babcock, Portland, Stephen P. Beale (orally), Skelton, Taintor & Abbott, Auburn, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

The defendants, Verna G. Allen, Robert W. Macomber, Jr., and Robert J. DeSimone,[1] appeal from the denial of their motion for relief from a default judgment entered in the Superior Court (Hancock County, *Smith, J.*) on the complaint of the plaintiffs, Paul and Sara Brouillard, seeking damages against the defendants for Allen's alleged breach of contract and for the alleged tortious interference with that contract by Macomber and DeSimone. We affirm the judgment.

In the spring of 1989, the Brouillards entered into an agreement with Allen for

---

**1.** Although it appears that Macomber and DeSimone were acting as financial advisers to Allen in the transaction at issue, the precise nature of the relationship is not set forth in the record.

the purchase and sale of property that the Brouillards planned to operate as a hotel. The contract allowed the Brouillards to take immediate possession of the property and to begin its renovation prior to the recited closing date of July 1, 1989. On the advice of Macomber and DeSimone, who were concerned about Allen's tax liability attendant on the sale, Allen sought to close on an unspecified later date. Despite the Brouillards' repeated attempts to close in the last half of 1989, Allen refused. The Brouillards' financing commitment for the property lapsed on November 15, 1989, prompting them to diligently but unsuccessfully seek alternative financing over the course of the next year. On October 9, 1990, Macomber and DeSimone advised the Brouillards that if the closing did not occur by November 1, 1990, Allen would transfer the title of the property to Macomber and DeSimone. Ten days later, the Brouillards brought this action.

The defendants were jointly represented by two attorneys.[2] Although the trial court granted their motion to enlarge the time to December 5, 1990 within which the defendants could file a responsive pleading, none was filed on behalf of the defendants until after the entry of a default against them. On March 14, 1991, the Brouillards requested an entry of a default, and a default was entered against the defendants on March 20, 1991. After an August 6, 1991 hearing on damages at which the defendants were represented by counsel, the court awarded the Brouillards $730,000 in damages from Allen for her breach of contract and $40,000 in damages from Macomber and DeSimone for their tortious interference with that contract. The defendants' motion for relief from the default judgment on the ground of excusable neglect was denied by the court, and the defendants appeal.

■ The defendants first challenge the trial court's denial of their motion for relief from the default judgment. They argue that the neglect of their case was excusable because their principal attorney suffered from a severe clinical depression that rendered him unable to attend to his responsibilities during the course of the representation.[3] When just, relief from a default judgment may be granted for excusable neglect. M.R.Civ.P. 60(b)(1) (1992). We review the denial of a motion for relief from a default judgment for an abuse of discretion and will vacate the judgment only if the denial works a plain and unmistakable injustice against the defendant. *Cutillo v. Gerstel,* 477 A.2d 750, 752 (Me. 1984); *Hamm v. Hamm,* 584 A.2d 59, 62 (Me.1990). When, as here, a party employs more than one attorney, the excusable neglect of only one of the attorneys does not justify relief from a default. *See, e.g., Flett v. W.A. Alexander & Co.,* 302 F.2d 321, 323 (7th Cir.1962).

■ In this case, *both* of the defendants' attorneys received copies of the essential pleadings that led to the default judgment. Because a lawyer's neglect of a case is chargeable to the client, a client seeking relief on the ground of excusable neglect must justify his own failure to avoid the neglect. *See Laurel Bank & Trust v. Burns,* 398 A.2d 41, 44–45 (Me. 1979); *Pederson v. Cole,* 501 A.2d 23, 25 (Me.1985). There was scant evidence in this record that the defendants had monitored the progression of this case. The defendants offer no explanation of why neither their other attorney nor they themselves were able to prevent the claimed neglect of their case. Although Paul Brouillard had contacted Allen prior to the request for a default to inform her of her attorneys' indifference concerning the case, there was no evidence that any of the defendants attempted to investigate the conduct of the case. On this record, we find no abuse of the trial court's discretion by its denial of the defendants' motion for relief from the judgment.

---

2. Other counsel represent the defendants on this appeal.

3. The defendants also sought relief from the default under M.R.Civ.P. 60(b)(6) that permits

relief for "any other reason," but made no offer pursuant to this rule distinct from that made in support of their contention of excusable neglect.

■ We do not agree with Allen's contention that the evidence is insufficient to support the trial court's finding as to the damages suffered by the Brouillards. Damages for the breach of a contract for the sale of real property equal the difference between the unpaid purchase price of the property and its fair market value at the time of the breach. *Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646, 654 (Me. 1979). On the entry of default, the allegations contained in the complaint operate as findings of fact. *Id.* at 652. "Findings of facts made by the presiding justice will be set aside only if clearly erroneous." *Leadbetter v. Morse*, 510 A.2d 524, 526 (Me. 1986).

■ The parties agree that the purchase price for the property was $925,000 of which $770,000 remained unpaid. Allen, however, challenges the trial court's finding that the property's fair market value at the time of the breach was $1,500,000. The court had before it two appraisals of the property performed by John E. Pervear: the first, performed in March 1988, valued the property at $1,000,000; the second, performed in August 1990, valued the property at $1,500,000, with the increase attributed to the improvements made by the Brouillards. Allen argues that the breach occurred on July 1, 1989, and accordingly, the March 1988 appraisal accurately reflects the value of the property at that time. Based on the Brouillards' pleadings and the evidence before it, the trial court rationally could find that Allen did not breach the contract on July 1, 1989, but that the breach had occurred when the Brouillards were informed that Allen would terminate their rights on November 1, 1990, and thus the August 1990 appraisal more accurately reflected the fair market value of the property at the time of the breach.

■ Nor do we agree with the contention of Macomber and DeSimone that the evidence is insufficient to support the trial court's determination of the Brouillards'

damages for their tortious interference with the contract between the Brouillards and Allen. We have previously stated that "[d]amages are not fatally uncertain by reason that the amount of the loss sustained is incapable of exact proof by mathematical demonstration." *Merrill Trust Co. v. State*, 417 A.2d 435, 440–41 (Me.1980). *See also King v. King*, 507 A.2d 1057, 1060 (Me.1986) (recoverable damages need not be proved to mathematical certainty but grounded in facts in evidence); *Muratore v. M/S Scotia Prince*, 656 F.Supp. 471, 483 (D.Me.1987), *compensatory damages aff'd; punitive damages vacated*, 845 F.2d 347 (1st Cir.1988) ("Once damage has been established in a nonjury trial, the trial judge has considerable discretion in fixing the amount of damages.").

■ In this case, the court heard evidence that Allen's refusal to perform by November 15, 1989 caused the Brouillards' financing commitment to lapse, forcing them to expend approximately $7,000 in fees and considerable time and effort in seeking an alternative source of financing. The court also heard evidence that the Brouillards suffered stress and anxiety from the uncertainty about their location and livelihood and the possible loss of their investments in the property. On this evidence, we cannot say that the trial court erred in determining the amount of the damages suffered by the Brouillards as a result of the conduct of Macomber and DeSimone.

The entry is:

Judgment affirmed.

All concurring.