Roger WILLIAMS, et al.

v.

**John L. UBALDO.**

Supreme Judicial Court of Maine.

Submitted on briefs Dec. 20, 1995.

Decided Jan. 23, 1996.

---

Charles H. Abbott, Skelton, Taintor & Abbott, Auburn, for Plaintiff.

Ian M. Bennie, Susan J. Parcels, Chute & Associates, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Defendant John L. Ubaldo appeals from a judgment entered in the Superior Court (Oxford County, *Alexander, J.*) awarding damages to plaintiffs Roger and Cynthia Williams for breach of a real estate contract. Ubaldo, the purchaser under the contract, argues that the failure to consummate the sale resulted from his inability to secure financing, and the court erred in finding that he had breached the contract. He also challenges the elements of damage included in the judgment. We conclude that the court erred only in calculating the damage award. Thus, we modify the judgment and affirm.

The facts as developed in a jury-waived trial are as follows: In January 1993, Ubaldo entered into a written contract to purchase the Williamses' home in Oxford. The purchase price was $450,000. In preparation for closing, the property was appraised at $480,-000. The terms called for a down payment of $10,000, the remainder to be paid at closing, scheduled for May, 1993. The contract contained a financing provision, stating that Ubaldo's obligation to purchase was contingent on his ability to secure adequate financing. He was required to seek and accept financing in good faith. In the event of a breach by Ubaldo, the contract provided that the Williamses would retain the earnest-money deposit, while still reserving all available legal and equitable remedies.[1]

A few weeks prior to the closing, the parties amended the original contract, extending the time for Ubaldo's performance. The amendment resulted from the fact that he attempted to secure financing with a bank, but was unable to qualify for a mortgage loan. Ubaldo's mother agreed to co-sign the promissory note, and the bank then agreed to extend financing for the purchase. The loan was for $360,000; the remaining $90,000 was to be supplied by his mother on or before closing. The parties attended a closing, but the sale was not completed because the mother failed to provide the $90,000 cash payment. Ubaldo later applied for another mortgage loan without his mother, and was denied.

After a few months, the Williamses filed a complaint against Ubaldo seeking specific performance of the contract, and an award of the $10,000 deposit. Ubaldo then filed a complaint against the Williamses seeking a return of the deposit. The court consolidated the two cases. Before trial was held, the Williamses sold their home to another purchaser for $430,000.

At the trial, the court found that Ubaldo had breached the contract. In assessing damages, the court compared the contract price, $450,000, and the eventual selling price, $430,000, and awarded the $20,000 difference. In addition, the court assessed $3,500 for real estate taxes paid by the Williamses from the time of the breach to the time of sale, and $500 for expenses plaintiffs incurred in connection with snow removal. The court assessed damages in the total sum of $24,000; judgment was entered for $14,000 after offsetting the deposit. Ubaldo appeals.

---

1. The contract contains the following provisions:

   8. FINANCING: This contract is subject to an approved *conventional* mortgage of *80%* of the purchase price at an interest rate not to exceed *current* % and amortized over a period of not less than *30* years.

   The Seller(s) agrees to pay no more than *0* points, and the Purchaser(s) agrees to pay no more than *current* points, if required by the lender on the above mortgage.

   a. This contract is subject to a written statement from the lender, within *seven (7)* days of the Effective Date, that the Purchaser(s) has made application. Loan approval shall be obtained within *sixty (60)* days of the Effective Date of this contract.

   b. The Purchaser(s) is under a good-faith obligation to seek and accept financing on the above-described terms. The Purchaser(s) acknowledges that a breach of this good-faith obligation to seek and accept financing on the above-described terms. [sic]. The Purchaser(s) acknowledges that a breach of this good-faith obligation will be a breach of this contract.

   c. If either of these conditions is not met within said time periods, the Seller(s) may declare this contract null and void, and the earnest money shall be returned to the purchaser.

   10. DEFAULT: If the Purchaser(s) fails to consummate this transaction, this contract shall, at the option of the Seller(s) be terminated, and the Purchaser(s) shall forfeit said earnest money and Seller(s) may employ all available legal and equitable remedies.

### I. Breach of Contract

Ubaldo argues that he is not bound to perform under the contract because the financing fell through for reasons beyond his control. He also argues that the Williamses became aware of his mother's involvement in the financing well before closing, and could have voided the contract at that time. In the alternative, he asserts that they could have required his mother to co-sign the contract. Because they did not exercise these options, he argues, they should not now be able to hold him responsible for the failed closing.

■ Ubaldo's arguments are without merit. By securing financing at variance with the terms of the financing clause, Ubaldo waived the protection afforded by the contract. The financing clause was a condition precedent to the existence of a binding contract. *See Loda v. Sargeant & Associates, Inc.,* 188 Conn. 69, 448 A.2d 812, 817 (1982); *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226, 1230 (1980); *Wolf v. Crosby,* 377 A.2d 22, 27 (Del.Ch., 1977). Such clauses serve to protect the purchaser with respect to the terms of financing, *see, Ross v. Eichman,* 129 N.H. 477, 529 A.2d 941, 943 (1987), *see also, Leavitt v. Fowler,* 118 N.H. 541, 391 A.2d 876, 878 (1978); *Loda,* 448 A.2d at 817; *McDermott v. Burpo,* 663 S.W.2d 256, 260 (Mo.App.W.D., 1983); *Renouf v. Martini,* 577 S.W.2d 803, 804 (Tex.Civ.App.—Hous (14 Dist.), 1979); *Wolf,* 377 A.2d at 27, and can be waived by the purchaser. *Financial Realty Trust v. W & Z Properties, Ltd.,* 425 A.2d 1340, 1342 (Me.1981). *See also, Ross,* 529 A.2d at 944; *Leavitt,* 391 A.2d at 878; *Barker v. Leonard,* 263 Ill.App.3d 661, 200 Ill.Dec. 507, 509, 635 N.E.2d 846, 848 (1 Dist., 1994). Waiver may be established by express waiver, or by actions clearly inconsistent with an intent to retain the contractual protection. *Barker,* 200 Ill.Dec. at 509, 635 N.E.2d at 848; *Shaeffer,* 619 P.2d at 1230.

■ When a purchaser proceeds with a transaction despite his inability to secure financing under the terms specified in a financing clause, the purchaser is deemed to have waived the protections of that clause. He cannot later resurrect the condition precedent as a defense to an action for breach. *Cf., Financial Realty Trust,* 425 A.2d 1340 (Me.1981) (purchaser who proceeded with transaction despite inability to secure all necessary permits had waived the protections of the clause relating to permits). *See also, Ross,* 529 A.2d 941 (buyers informed seller's broker that they were unable to secure financing and would instead complete the closing with cash); *Leavitt,* 391 A.2d 876, 878 (where purchasers obtained conventional financing and contract contemplated they would secure a Farmers Home Administration mortgage purchasers had waived that contractual provision); *Loda,* 448 A.2d at 817 (purchasers' application and acceptance of mortgage on terms less favorable than those outlined in contract resulted in a waiver of that contractual provision); *Wolf,* 377 A.2d at 27 (acceptance of mortgage on terms less favorable than contract provision effected a waiver of that provision); *Barker,* 200 Ill. Dec. at 510, 635 N.E.2d at 849 (purchaser's failure to void the transaction when he was unable to raise the necessary funds, and instead going ahead with the closing, served as a waiver of purchaser's protection under the financing clause); *McDermott,* 663 S.W.2d at 260 (purchasers' notice to seller's agent that they would produce cash at closing was a wavier of the financing clause); *Aubert v. Bourg,* 259 So.2d 103, 106 (La.App. 4 Cir., 1972) (the act of applying for a mortgage on terms less favorable than in the contract served as a waiver of the purchaser's protections under the financing clause); *Renouf,* 577 S.W.2d at 804 (purchasers, unable to secure conventional financing, obtained promise from purchaser's father for loan, and thereby waived the financing clause).

■ Whether a party has waived a contractual right is a question of fact. *Hefferan v. Freebairn,* 34 Cal.2d 715, 214 P.2d 386, 389 (1950). When, as here, the court has not been asked to make formal findings of fact, we assume that the court found all facts necessary to support its holding. These assumed facts will not be overturned unless clearly erroneous. *O'Halloran v. Oechslie,* 402 A.2d 67, 69 (Me.1979).

■ The record supports the conclusion that Ubaldo waived the protections of the

financing clause. When his application for a conventional mortgage was rejected by one bank, Ubaldo could have applied to other commercial lenders. If he was still unable to secure a mortgage under the terms in the financing clause, he had the option at that point of voiding the contract. Instead, he reapplied for a mortgage under different terms (i.e., with his mother as co-signor) and arranged for additional financing from his mother for the remainder of the purchase price. Such conduct constitutes a waiver, and the court correctly held that he breached the contract.

## II. Damages

Ubaldo next argues that the court erred in granting $24,000 in damages because that amount is not supported by the evidence in the record. "A damage award will be disturbed only when it is plain that there is no rational basis upon which the amount of the award may be supported. A rational basis exists if there is any competent evidence in the record to support it." *Bourette v. Dresser Industries, Inc.*, 481 A.2d 170, 174 (citations omitted) (Me.1984). "In order to be recoverable, damages must not be uncertain or speculative but must be grounded on facts in evidence." *King v. King*, 507 A.2d 1057, 1059 (Me.1986); *see also, Michaud v. Steckino*, 390 A.2d 524, 530 (Me.1978) ("[I]t is well settled law that damages are not recoverable when uncertain, contingent, or speculative. Damages must be grounded on established positive facts or on evidence from which their existence and amount may be determined to a probability. They must not rest wholly on surmise and conjecture.") (citations omitted).

"Although damages need not be proved to a mathematical certainty, an award must be supported by some evidence of the value of property damaged or expenses incurred. The [fact finder] is entitled to act upon probable and inferential as well as direct and positive proof in determining damages. A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability."

*Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990).

The court awarded plaintiffs the $20,000 difference between the contract price and the subsequent sales price as compensatory damages. "The overriding purpose of an award of compensatory damages for a breach of contract is to place the plaintiff in the same position as that enjoyed had there been no breach." *Marchesseault v. Jackson*, 611 A.2d 95, 98 (Me.1992), citing *Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646, 654 (Me.1979). In an action for breach of contract for the sale of real property, the claimant is entitled to the "benefit of the bargain", which equals the difference between the contract price and the fair market value at the time of breach. *Brouillard v. Allen*, 619 A.2d 988, 991 (Me.1993), citing *Forbes*, 409 A.2d at 654. The reports of professional appraisers have been accepted as evidence of the fair market value of real estate. *See Brouillard*, 619 A.2d at 991. Evidence of the price resulting from a subsequent sale is also probative of a property's fair market value. *See, e.g., Dehahn v. Innes*, 356 A.2d 711, 722 (Me.1976) (addressing the resale of goods).

Ubaldo argues incorrectly that the only evidence as to fair market value at time of breach is the testimony of the broker that the house had been appraised for $480,000. In fact, no appraiser actually testified. The court had only the subsequent sale before it. There is no suggestion that that sale was unreasonable or made in bad faith. The court acted well within its discretion in finding that the subsequent sales price was an accurate measure of market value at the time the contract was breached.

Ubaldo argues that the court erred in granting $3500 in damages for the property taxes paid by the Williamses for the period of time between the breach and sale. We agree. The Williamses retained ownership, use, and occupancy of a valuable asset during that time. There is no authority for the proposition that the avoidance of tax liability is part of the benefit of the bargain and may be included without considering corresponding financial benefits.

Finally, Ubaldo challenges the special damages awarded for the Williamses'

costs in repurchasing winter-related equipment and the extra costs of snow removal. He argues that these special damages were not within the contemplation of the parties when they signed the contract. A claimant is entitled to "special damages" resulting from the unique needs and characteristics of the parties, if the parties were reasonably aware of those circumstances at the time the contract was created. *Forbes,* 409 A.2d at 654. *See also, Susi v. Simonds,* 147 Me. 189, 190–91, 85 A.2d 178 (1951), citing *Hadley v. Baxendale,* 9 Exchequer Rep. 341:

> [F]or the plaintiff to recover the special damages he here claims to have suffered beyond what would naturally flow from the breach claimed of such contract, it must affirmatively appear that the special circumstances under which the contract was actually made which gave rise to such damages were communicated by the plaintiff to the defendant and were thus in the contemplation of both parties at the time of making the contract.

■ It is not reasonable to conclude that the extra costs of snow removal and winter equipment are foreseeable consequences of a breach of a real estate contract in the ordinary case. People selling their homes in Maine are not necessarily in the process of moving to warmer climates: they could be staying in Maine, or moving to another northern state. There is no evidence in the record that Ubaldo was aware of the Williamses' plans after the sale. Neither is there any evidence that they communicated their intention to sell their winter equipment and move to a warmer climate.

The Superior Court did not err in finding that Ubaldo breached the sale contract, but it erred in awarding payment for taxes and snow removal.

The entry is:

Judgment modified to $10,000, reflecting a total damage award of $20,000 minus the offset for the deposit. As so modified, judgment affirmed.

All concurring.