STATE OF MAINE
Knox, ss. Superior
SUPERIOR COURT

RECEIVED AND FILED

AUG 12 2005

STATE OF MAINE

KNOX, ss.

APR 28 2005

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-17

FOX ISLAND GRANITE COMPANY, INC.,

Plaintiff

v.

AMERICAN GRANITE
MANUFACTURERS, INC.,

Defendant

DECISION AND ORDER

This matter is before the court after bench trial on damages.

Plaintiff filed its complaint with the Clerk of the Superior Court on March 15, 2004. On April 8, 2004, a return of service was filed with the court indicating that the summons and complaint had been served on Michael J. Norris, Clerk of American Granite Manufacturers, Inc. on March 23, 2004, at 3:05 p.m. On May 19, 2004, plaintiff filed an affidavit and request for default and default judgment with the court and default was entered by the associate clerk on May 25, 2004. Plaintiff requested a hearing on damages.

A hearing on damages was held by this court on October 21, 2004. Plaintiff was present in the person of Daniel Bickford, president and shareholder of plaintiff corporation along with its counsel. Defendant was represented by counsel and its general manager. At the hearing, counsel for defendant first challenged the intention of the court to proceed to hearing by first orally moving the court for a continuance advising it that he had been retained by defendant no earlier than 7:00 a.m. o'clock the same morning. Counsel further advised the court that he had received a communication at 6:00 p.m. the previous evening from the clerk of the defendant

corporation and had been retained the following morning. First, counsel advised that he had witnesses who were not able to testify as one was out of the country and the others were in Massachusetts. It was represented that the defendant was not notified of the instant hearing by its corporation clerk until two days previous. Counsel requested an opportunity to move to set aside the default.

Upon inquiry by the court as to the nature of the excusable neglect to be proposed and the nature of the meritorious defense, defendant's counsel advised that investigation was being made as to the issue of jurisdiction, issue of service and why the clerk of the corporation, a Massachusetts attorney, did not properly advise his client. As to the meritorious defense, he challenges the nature of the contract with the individuals rather than the plaintiff corporation and the question of foreseeability of the damages. Counsel also challenged the allegation by plaintiff that it had complied with all of the terms of the contract in issue. Finally, defendant seeks to argue the failure of the plaintiff to mitigate its damages.

After hearing argument of counsel, the court concluded that whatever issues exist between the defendant and its clerk/attorney is a matter between those parties under Massachusetts's law and not before this court. The court noted that sufficient opportunity had been given the defendant to present pleadings including an extra 30 days from default requested by defendant's clerk/attorney and granted by plaintiff's counsel. Further, with respect to any issues of jurisdiction or matters on the merits relating to the defendant, the court indicated that it would give the parties sufficient opportunity to challenge any of the conclusions reached by appropriate motion. The matter went to hearing.

Because of the default, "... the allegations in the plaintiff's complaint are deemed to be true and become findings of fact." *McAlister v. Slosberg*, 658 A.2d 658 (Me. 1995).

Citing *Brouillard v. Allen*, 619 A.2d 988, 998 (Me. 1993); *Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646, 652 (Me. 1979).

The complaint establishes that the plaintiff is a Maine corporation and the defendant is a Massachusetts corporation. Plaintiff and defendant entered into a contract on March 14, 2002, which Bickford agreed to sell and the defendant agreed to purchase all of plaintiff's production of certain types of granite to be produced by plaintiff at its quarry. Pursuant to the agreement, the plaintiff shipped to the defendant certain granite blocks which were accepted by the defendant but who has refused and failed to pay for the blocks.

Count II of the complaint establishes that the plaintiff delivered to the defendant the granite blocks with reasonable expectation of being paid, defendant has refused to pay, it would be unjust for defendant to retain said blocks without payment and that plaintiff is entitled to reasonable value.

Count III of the complaint asserts that in anticipation of the defendant honoring the contract, plaintiff purchased substantial amounts of equipment and incurred other start-up expenses but, because of defendant's breach, plaintiff was forced to cease operation and to sell its equipment all at substantial losses. In addition to the forced sale of the equipment at a discount, plaintiff lost money invested in the enterprise and substantial profits that would have arisen from the enterprise.

Daniel F. Bickford and Lucy M. Bickford are lifelong residents of Vinalhaven. They have owned a granite quarry in that community since 1985. In November of 2001, Mr. Bickford became aware that American Granite Manufacturers, Inc. (AGM) of Marlborough, Massachusetts, had expressed an interest in acquiring some Maine granite. Mr. Bickford sent to a Mr. Marcello Mallegni some samples of Vinalhaven granite. Upon Mr. Mallegni's positive response, Mr. Bickford visited with him in

Marlborough, Massachusetts. Subsequently, Mr. Mallegni visited Mr. Bickford at the quarry. That same month, Mr.. Bickford wrote to Mr. Mallegni acknowledging the previous visit and relayed some information as to operational expenses to open and operate the quarry. After Mr. Mallegni communicated to Mr. Bickford that he had an interest in purchasing all of the quarry's production, Mr. Bickford, through the use of his corporation, developed a business plan. Through the use of this business plan and communications with Mr. Mallegni, plaintiff acquired a $200,000 line of credit with the Damariscotta Bank & Trust. This line of credit was secured by a certificate of deposit in the possession of the bank belonging to an investor supporting plaintiff's efforts.

A second letter was sent in January 2002 to Mr. Mallegni at his address at Leamar Industries at the same address as American Granite Manufacturers, Inc. with more details as to the work being done to prepare for the production of the quarry. In the letter, Mr. Bickford discussed his line of credit, the price of the product and equipment being prepared for purchase or lease to operate the quarry.

Again, in February, continuing the consultation with Mr. Mallegni, Mr. Bickford advised him that he had arranged financing for a large caterpillar tractor forklift, drill rigs and air compressors, and arrangements for delivery. Arrangements had been made for living quarters for a consultant and Mr. Bickford advised Mr. Mallegni that any contract entered into would be required to be presented to the bank.

On March 14, 2002, Daniel and Lucy Bickford entered into a "Granite Purchasing Agreement" prepared by Mr. Mallegni between American Granite Manufacturers, Inc. of Marlborough, Massachusetts, and Daniel F. and Lucy M. Bickford both of Vinalhaven. This agreement was signed by the president of American Granite Manufacturers, Inc., later found not to be Mr. Mallegni in spite of Mr. Bickford's understanding of Mr. Mallegni's authority. The agreement provided that AGM was to

purchase "all of the 'gangsaw size' first choice granite block production," and was to be shipped FOB Rockland, Maine, AGM agreed to make payments of each shipment within 30 days, it was for a term of five years with an option in AGM to renew for another five years, AGM agreed to "use its best efforts" to provide to the Bickfords a qualified quarry assistant with plaintiff providing, among other things, housing for the consultant, AGM reserved the right of refusal to purchase any or all second choice material and the right to assign the agreement to another entity. In addition, paragraph 5 reads:

> Neither party of this agreement is required to perform if it is determined that the granite reserve will not produce at a level or quality of material to satisfy both parties.

Mr. and Mrs. Bickford had previously created a corporation called Fox Island Granite Company, Inc. upon the expectation that they might, at some time, start production of the quarry. They transferred the purchase agreement to the corporation for performance. Plaintiff moved the heavy equipment onto the property, it contracted with a blasting contractor and they removed the top layer of granite. Mr. Mallegni and associates came to the Island to review the situation. He indicated to Mr. Bickford that he liked the stone and would like to get delivery from the stone that had been produced. Mallegni specifically requested that the stone he viewed on the site be delivered to the Marlborough location. This shipment took place in August of 2002. An invoice of Fox Island Granite Co., Inc., dated October 30, 2002, indicates that blocks of granite were delivered August 17, 22, 24 and 29 for a total of seven blocks or 689 cubic feet. At the agreed price of $8.00 a cubic foot, defendant was invoiced $5,512. This has not been paid.

Having expended a substantial sum of money in opening the quarry and preparing for production and without any funds received from the defendant, plaintiff

complained to Mr. Mallegni that he was maintaining inventory for which he was receiving no compensation and that if defendant expected to receive the full production, he needed some financial arrangements. As a result, Mr. Mallegni created an agreement representing that the defendant would advance to the plaintiff $20,000 on the 23rd day of August, 2002, to secure plaintiff's agreement to ship $20,000 worth of granite blocks and material within the following 60 days. The security of the transaction was represented by a promissory note executed by Daniel F. Bickford as president and treasurer of Fox Island Granite Company, Inc. as well as individually.

Having received no funds under either agreement or the note, Daniel Bickford wrote AGM, attention Marcello Mallegni, on September 6, 2002. At that time, he complained that he had received no money, phone calls had not been returned, and he inquired as to the status of Mr. Mallegni's position with respect to the acceptability of the product. Mr. Bickford made clear that he had already invested nearly $200,000 into quarry development and he needed cash to produce product. He asked for a representative of the defendant to come to Vinalhaven to assist in continued production. Mr. Bickford received no response from that communication.

The result of these activities is that plaintiff has expended substantial sums of money to open a granite quarry, test the material and ship product to the defendant in accordance with a written agreement properly signed and executed by the president of the defendant corporation and for which he has received, in spite of promises, not a red cent.

Defendant argues that the product actually delivered did not meet the terms of the contract as to size and quality. The unrebutted evidence is that Mr. Mallegni, at least representing some authority with regard to AGM, and having been aware of the purchasing agreement signed, asked the material to be delivered knowing that it was

less than quality material and smaller than the requested size. Defendant received and accepted the material and expressed no objection to its quality or size until suggested by defendant's representative at the hearing on damages. As pointed out by the plaintiff, 11 M.R.S.A. § 2-602, the Maine Uniform Commercial Code, provides that, "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Furthermore, when goods are deemed accepted, "The buyer must pay at the contract rate for any goods accepted." 11 M.R.S.A. § 2-607. In addition, the general manager of the defendant testified that the goods that had been delivered and which he inspected back in 2002, had either been cut to slabs for sale or put in the junk pile. In either event, they were still in the possession of or had been sold by the defendant.

The defense raised the issue of the liability of this particular defendant, the role of plaintiff's corporation in the transaction under a contract signed by individual shareholders and the relationship between Mr. Mallegni's corporation and defendant. Mr. Bickford testified that he understood Mr. Mallegni to be the president of the defendant corporation. The general manager testified that was not true but he agreed that the contract in question had, in fact, been signed by the president of the defendant corporation. He further testified that Mr. Mallegni is the president, treasurer and owner of Leamar Industries, and a shareholder and director in the defendant. Finally, the general manager testified that in 2002 both AGM and Leamar Industries were located at 896 Boston Post Road in Marlborough, a condition which existed at the time Mr. Bickford visited the site. It is further clear that numerous communications were sent by plaintiff to defendant on stationery of the plaintiff corporation, clearly putting defendant on notice that Fox Island Granite Company, Inc. was the main party-in-interest and that the issue had not been raised until this hearing on damages.

Plaintiff believes it had a five-year production contract. Plaintiff further presented undisputed evidence that core samples had been taken of the quarry of the quality of the product at the lower levels and that Mr. Mallegni was fully satisfied with the quality and quantity he was to receive. This testimony by plaintiff addresses the assertion by the defense that the plaintiff cannot claim lost profits because of paragraph 5 to the agreement that if the granite does not "produce at a level of quality of material to satisfy both parties," they may be excused from performance. This court concludes that defendant, through its agent Mr. Mallegni, was fully satisfied as to the quantity and quality expected to be delivered. Because of defendant's complete failure to perform, to the slightest degree, under an agreement which it voluntarily entered into, it can hardly argue that any level of due diligence would not suggest that it expected to receive granite of a quality and quantity consistent with the pre-blasting investigation. This agreement was prepared by Mr. Mallegni and reviewed by plaintiff's counsel. Defendant had a full opportunity to respond to the procedural deadlines, first to raise issues as to liability and secondly, after seven months, to acknowledge proceedings as to damages and to make arrangements for presentation of substantive evidence with regard to the terms and expectations under the agreement. As noted by the court at the time of the hearing, defendant received 30 days notice of the date, time and location of the hearing.

There is unrebutted sworn testimony that the plaintiff was required to reimburse Damariscotta Bank & Trust on its business line of credit the amount of $200,000. It is further unrebutted that the plaintiff incurred the following expenses to prepare the quarry for production solely in anticipation of performance of the agreement in question:

| | | |
|---|---|---|
| Maine Drilling and Blasting (blasting work at the quarry) | - | $38,000 |
| Southworth Milton (lease on excavator) | - | $27,500 |
| Ingersol Rand (lease on drill rig) | - | $26,500 |
| Loss of down payment on the front-end loader (repossessed) | - | $15,000 |
| Miscellaneous administrative and operational expense | - | $ 5,000 |

Plaintiff has expended the amount of $312,000 in anticipation of performance of the contract.

Plaintiff delivered material to defendant upon defendant's instructions in accordance with their agreement and accepted the product notwithstanding its top-level quality deficiencies and substandard size under the contract.

The law is clear that subject to limitations of the ability to perform and unforseeabiilty, an injured party is entitled to recover for all loss actually suffered as a result of the breach of a contract. It is the sole province of the factfinder to determine the amount. Claims for lost profits may not be speculative and are allowable only if they can be estimated with a reasonable certainty. *Marquis v. Farm Family Mutual Ins. Co.*, 728 A.2d 644 (Me. 1993).

In plaintiff's business plan, it indicated that it expected to produce roughly 40,000 cubic feet per year at $8.00 a cubic foot. Mr. Bickford testified that this information came from the core samples taken from the property. These core samples were brought from a level of 50 feet and provided information as to the volume of granite and its quality. Mr. Bickford testified that the $8.00 per cubic foot was a negotiated price agreed upon between himself and Mr. Mallegni. Mr. Bickford testified that he discussed the 40,000 cubic feet per year with Mr. Mallegni and that when he visited the Marlborough site, he found a full line fabrication facility with a large inventory of granite blocks from around the world. It was a big plant and Bickford was

satisfied that defendant would have full capacity to buy and utilize what could be produced. Further, with respect to the business plan, Mr. Bickford's investigation revealed that all costs of production and overhead would amount to $5.00 per cubic foot and his business plan reflected that projection. As a consequence, Mr. Bickford believed that due to his investigation, a five-year contract for production would result in annual sales of $320,000 with annual costs of $200,000 for a projected gross profit of $120,000. Since this was a five-year contract, he believed that he could expect $600,000 in profits from the operation. The court is satisfied that these numbers are not speculative and are estimated with reasonable certainty.

The defendant has brought no motions to challenge the jurisdiction of the court to provide relief from default. The defendant did bring a motion to amend the pleadings to allow it to argue the evidence presented at the hearing of the failure of the plaintiff to mitigate its damages. The evidence is that by the end of the year of 2002, it should have been obvious to the plaintiff that defendant was not going to perform and plaintiff made no effort to obtain another entity to which it could sell its production in order to mitigate these damages. Mr. Bickford's response was that selling a unique product like Vinalhaven granite requires marketing for which he has no resources.

It is certainly appropriate and proper to move to amend the pleadings to make them conform to the evidence. This can be done when it is clear that the parties have actually tried the issue to be added. However, the court cannot grant this motion for two reasons. First, there is no pleading by the defendant to amend. No documentation was entered in the docket of this case by the defendant until counsel entered his appearance at the hearing on damages orally and in open court. Secondly, the duty to mitigate is an affirmative defense and under Maine notice pleadings, it must be pled at an appropriate time to put the plaintiff on notice that it is to be an issue. Otherwise, the

court may refuse to accept any evidence on that issue. Further, M.R. Civ. P. 12(b) makes it clear that every defense must be asserted in a responsive pleading.

For all the foregoing reasons, on the evidence, plaintiff is entitled to $5,512 for goods sold and accepted by the defendant as stated on plaintiff's invoice of October 30, 2002. Plaintiff is further entitled to recovery of the monies expended in reliance upon its contract with defendant in the amount of $312,000 as its total cash expenditures. Finally, plaintiff has provided a reasonable basis for the court to find that in terms of its contract and its investigation of its ability to perform, there are reasonable grounds to expect that because of defendant's breach, plaintiff has lost profits in the amount of $600,000 represented by $120,000 for five years.

The entry will be:

> Judgment for plaintiff in the amount of $917,512 plus costs; prejudgment interest for 2004 to be at 4.28%; prejudgment interest for 2005 to be at 5.77%; post-judgment interest to run at 8.77%.

Dated: April _22_, 2005

Donald H. Marden
Justice, Superior Court

FOX ISLAND GRANITE CO INC VS AMERICAN GRANITE MANUFACTURERS INC
UTN:AOCSsr  -2004-0028061                    CASE #:ROCSC-CV-2004-00017
------------------------------------------------------------------------
SEL VD                                REPRESENTATION TYPE      DATE
01 0000003706 ATTORNEY:CHOWDRY, FRANK K N
ADDR:10 FREE STREET PO BOX 4510 PORTLAND ME 04112
    F FOR:AMERICAN GRANITE MANUFACTURERS INC      DEF        RTND   10/21/2004


02 0000000302 ATTORNEY:LIPMAN, DAVID
ADDR:227 WATER STREET PO BOX 1051 AUGUSTA ME 04332-1051
    F FOR:FOX ISLAND GRANITE CO INC               PL         RTND   03/15/2004




        Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.