ENTERED AUG 1 9 2014

STATE OF MAINE
YORK, SS.

SUPERIOR COURT
DOCKET NO. RE-13-10
JON-YOR-08-11-14

SUZANNE LUKAS and MARK )
LUKAS, )
)
      Plaintiffs, )
   v. )
)
GERALDINE OLLILA-PICKUS, )
M.D. )
)
      Defendant. )

ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT

I.     Background

Plaintiffs Suzanne and Mark Lukas owned the property located at 6 Shore Road Biddeford, Maine (the "Property").[1] Supp. S.M.F. ¶ 1. Plaintiffs and Defendant Geraldine Ollila-Pickus entered into a Purchase and Sales Agreement (the "P & S Agreement") on May 5, 2012. Supp. S.M.F. ¶¶ 2, 3. Pursuant to the P & S Agreement, Defendant agreed to purchase the Property for $890,000. Supp. S.M.F. ¶¶ 4, 5. Defendant deposited $40,000 earnest money into escrow. Supp. S.M.F. ¶ 6. The purchase was contingent upon Defendant obtaining a conventional loan of seventy percent of the purchase price. Supp. S.M.F. ¶ 8. Defendant was under a good faith obligation to seek and obtain financing on these terms. Opp. S.M.F. ¶ 9.

On May 31, 2012, Mr. Fishman, Defendant's real estate agent, asked for an extension of the June 13, 2012 closing date on Defendant's behalf stating that the Wells Fargo Bank underwriters were backed up. Supp. S.M.F. ¶¶ 20, 21.The Lukas's agreed to extend the closing date to June 28, 2012. Supp. S.M.F. ¶ 22.

---

[1] Defendant qualifies this fact by stating that Plaintiffs made the admission that they are currently the owners of the Property. However, both parties agree that the Property has since been sold to a third party.

1

At some point, Wells Fargo requested that Defendant provide them with a divorce decree in order for her to obtain a loan. Supp. S.M.F. ¶¶ 23-25; Opp. S.M.F ¶¶ 23-25. Defendant and her husband were separated at the time she entered the purchase and sales agreement. Opp. S.M.F. ¶ 17. Plaintiffs contend that the bank requested the divorce decree prior to Defendant's request for an extension of the June 13th closing date and that Defendant had an obligation to inform Plaintiffs of the request. Supp. S.M.F ¶¶ 24, 18. Defendant contends that the bank requested a divorce decree shortly before the June 28, 2012 closing date along with a gift letter. Opp. S.M.F. ¶¶ 24, 25. Defendant alleges that she is not exactly sure why she requested the first extension but that she believes it is because she did not yet qualify for financing. Opp. S.M.F. ¶ 26.

On June 25, 2012, Mr. Fishman requested a second extension of the June 28, 2012 closing date until July 31, 2012, in order for Defendant to fulfill the conditions of the loan. Supp. S.M.F ¶ 34. The request was made via email. Opp. S.M.F. ¶ 34. Plaintiffs did not accept the offer to extend the closing date until July 31, 2012. Supp. S.M.F ¶ 36. Mr. Fishman received an email from Attorney Adam Taylor on June 27, 2012, offering to extend the closing date if Defendant agreed to the following: (1) the extension would be until July 6, 2012; (2) the $40,000 in escrow would be released to Attorney Taylor's firm and become non-refundable; and (3) Defendant would deposit an additional $40,000 in escrow within 48 hours. Opp. S.M.F. ¶ 37. Mr. Fishman passed the email along to Defendant and her attorney, Greg Orso. Opp. S.M.F. ¶ 40. Defendant did not accept the offer to extend the closing date set forth in Attorney Taylor's letter. Supp. S.M.F ¶ 47. Defendant did not close on the property on June 28, 2012. Supp. S.M.F ¶ 48. Attorney Taylor did not receive notice that Defendant was exercising a financing contingency. Supp. S.M.F ¶ 51. Attorney Taylor followed up with a letter on July 2, 2012 indicating

2

that it was Plaintiffs' position that Defendant breached the P & S Agreement. Supp. S.M.F ¶ 49.

Plaintiffs sold the property, and closed on January 13, 2014, at a price of $850,000. Supp. S.M.F ¶ 57. Plaintiffs plead expenses of $106,914.75 for the mortgage, real estate taxes, homeowners' insurance, heating fuel, heating mechanical services, propane, electricity, snow removal, homeowners' association dues, lawn care, gardening, moving furniture in and out of the home, and travel costs. Supp. S.M.F ¶¶ 58-61. Plaintiffs plead attorneys fees and costs of $24,656.52. Supp. S.M.F ¶ 62. Plaintiffs have brought this action for two counts of breach of contract, negligent misrepresentation, and specific performance. The parties bring cross motions for partial summary judgment.

II.     Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Beal v. Allstate Ins. Co., 2010 ME 20, ¶ 11, 989 A. 2d 733 (Me. 2010); Dyer v. Department of Transportation, 2008 ME 106, ¶ 14, 951 A.2d 821 (Me. 2008). When reviewing a motion for summary judgment, the court reviews the parties' statements of material facts and the cited record evidence in the light most favorable to the non-moving party. Id.

A genuine issue of material fact exists where the fact finder must make a determination between differing versions of the truth. Reliance National Indemnity v. Knowles Industrial Services Corp., 2005 ME 29, ¶7, 868 A.2d 220; citing Univ. of Me. Found. v. Fleet Bank of Me., 2003 ME 20, ¶20, 817 A.2d 871. Furthermore, "a fact is material if it could potentially affect the outcome of the case." Id.

III.     Discussion

Plaintiffs have filed a motion for summary judgment asking the court to find that as a matter of law that Defendants did not exercise the financing contingency in the P & S

3

Agreement and that they are in breach of contract for failing to close on June 28, 2012. Defendant argues that there is no requirement under the P & S Agreement that Defendant actively "exercise" the financing contingency. Defendant contends that when Defendant was unable to secure financing the P & S Agreement became void pursuant to the financing contingency. Defendant argues that she fulfilled all of her obligations.

Plaintiff cites to Williams v. Ubaldo, for the proposition that the financing contingency may be waived. Williams v. Ubaldo, 670 A.2d 913, 916 (Me. 1996). However the court finds important distinctions between Williams and the case at hand. In Williams, the buyer sought to go forward with a sale despite his inability to secure financing under the terms set out in the purchase and sales agreement. The Williams court held that a buyer may choose to waive the financing contingency where he is not able to find financing on terms as favorable as those in the contract, however the waiver precludes the use of the financing contingency as a defense for any subsequent breach of contract. Id. at 916-17. In this case, Defendant claims to have exercised the financing contingency because she was unable to secure financing. While in both cases there is a question as to whether the buyer waived the financing contingency, the issue as to why there may be a waiver is different in the two cases. In the Williams case, the buyer chose to seek less favorable financing terms instead of exercising the financing contingency available to him. In the current case, Plaintiffs assert that Defendant waived her right to assert the financing contingency by seeking different financing than that specified in the P & S Agreement. The question is not the effect of a knowing waiver of the financing contingency, as it was in Williams, but whether Defendant sought financing in good faith according to the terms of the agreement.

Whether Defendant sought financing in good faith under the terms of the contract is contested by the parties. The contract states: "This Agreement is subject to Buyer

4

obtaining a conventional loan of 70.000% of the purchase price, at an interest rate not to exceed prevailing % and amortized over a period of 30 years. Buyer is under a good faith obligation to seek and obtain financing on these terms." Plaintiffs argue that because Defendant was working with Wells Fargo to secure an 80/20 loan instead of the 70/30 prescribed in the P & S Agreement, Defendant breached the financing term of the agreement and waived her right to exercise the financing contingency. Defendant claims that she sought financing with Wells Fargo and was offered a better financing package than that outlined in the P & S Agreement. Defendant argues that even if she is obligated to seek the exact financing specified in the Agreement, she complied. Being offered a better financing product and pursuing it should not mean that she has breached her obligations under the contract.

What was required of Defendant under the terms of the Purchase and Sales Agreement is a question of law, whether Defendant acted with diligence in seeking financing is a question of fact. Williams v. Ubaldo, 670 A.2d 913, 916 (Me. 1996); Lynch v. Andrew, 20 Mass. App. Ct. 623, 625, 481 N.E.2d 1383, 1385 (1985). According to the P & S Agreement, Defendant was "under a good faith obligation to seek and obtain financing on these terms", referring to the 70/30 terms specified in the Purchase and Sales Agreement.

Whether Defendant did make a good faith effort to seek financing under those terms is a question of fact. The Court denies Summary Judgment.

a. Exercise of contingency

Plaintiffs argue that Defendant failed to properly exercise the financing contingency because she did not notify Plaintiffs in writing. The P & S Agreement states as follows:

> b. Buyer to provide Seller with letter from lender showing that Buyer has made application for loan specified in (a) and, subject to verification of information, is qualified for the loan requested within 5 days from the

Effective Date of the Agreement. If Buyer fails to provide Seller with such letter within said time period, Seller may terminate this Agreement and the earnest money shall be returned to Buyer.

c. Buyer hereby authorizes, instructs and directs its lender to communicate the status of the Buyer's loan application to Seller, Seller's licensee or Buyer's licensee.

d. After (b) is met, Buyer is obligated to notify Seller in writing if a lender notifies Buyer that it is unable or unwilling to provide said financing. Any failure by Buyer to notify Seller within two days of receipt of Buyer of such notice from a lender shall be a default under this Agreement.

There is no indication in the pleadings that Defendant provided Plaintiffs with the letter specified in (b). Additionally, if (b) was met, the parties disagree as to whether Wells Fargo notified Defendant that it was unable or unwilling to provide financing such that Defendant was obligated to notify Plaintiffs according to (d). Genuine issues of material fact remain. Summary Judgment is denied.

IV.     Conclusion

The court DENIES the cross-motions for Summary Judgment.

DATE:     8/11/14

_____
John O'Neil, Jr.
Justice, Superior Court

6

ATTORNEYS FOR PLAINTIFFS:
ADAM TAYLOR
H ILSE TEETERS TRUMPY
TAYLOR MCCORMACK & FRAME LLC
30 MILK STREET 5TH FLOOR
PORTLAND ME  04101


ATTORNEYS FOR DEFENDANT:
THEODORE IRWIN
ROBERT WEAVER
IRWIN TARDY & MORRIS PA
PO BOX 7030
PORTLAND ME  04112-7030