Jennings C. WROTEN and Beatrice D. Wroten, his wife, Defendants Below, Appellants,

v.

MOBIL OIL CORPORATION, a corporation of the State of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Dec. 28, 1973.

Clement H. Wood of Allmond & Wood, Wilmington, for Jennings C. Wroten and Beatrice D. Wroten.

James F. Kipp and Dennis D. Ferri, of Becker & Kipp, Wilmington, for Mobil Oil Corp.

Before HERRMANN, C. J., CAREY, J., and TAYLOR, Judge, sitting.

TAYLOR, Judge.

This is an appeal from an·order of the Court of Chancery granting specific performance of a lease agreement.

I

Defendants, owners of a property in Newport, Delaware, entered into an agree-ment dated October 16, 1969 leasing the property to plaintiff, subject to certain terms and conditions hereinafter discussed. Defendants received nominal consideration ($10.00) upon their execution of the agreement. By the terms of the agreement plaintiff was given ninety (90) days within which to accept the agreement. On January 14, 1970, within the ninety (90) day period, plaintiff notified defendants that it was not accepting the agreement and released defendants from the terms of the agreement. Three months later, plaintiff wrote to defendants indicating a desire to reactivate the agreement, requesting defendants to sign a copy of the letter indicating their acceptance of its terms, and providing that plaintiff could accept the agreement within thirty (30) days thereafter. The copy of the letter was executed and returned by defendants and thereafter was accepted by plaintiff.

Plaintiff then undertook to have the property rezoned for a service station. The rezoning proved difficult and culminated in litigation in the Superior Court. On November 29, 1971, near the conclusion of plaintiff's efforts to obtain satisfactory rezoning, defendants wrote to plaintiff proposing that the agreement be either terminated subject to reimbursement to plaintiff of its costs and expenses incurred up to that time or that the lease area be reduced in size in order to permit defendants to maintain a hardware store on a portion of the leased parcel. Plaintiff did not respond to this request. On February 23, 1972 plaintiff informed defendants that it had obtained the necessary licenses and permits and that pursuant to the terms of the agreement defendants would be required to vacate the property within nine months. Upon ·defendants' refusal to proceed according to the terms of the agreement, plaintiff brought this action in the Court of Chancery for specific performance of the agreement. From the grant of such relief (see 303 A.2d 698), the defendants appeal.

## II

The agreement provided that the lease period would not commence until all licenses, permits and other authorizations[1] "satisfactory to Tenant as to validity, finality, form, substance and duration" required for the erection and operation of the service station had been obtained. The agreement further provided that if such permits were not obtained within a reasonable time or if appeals were filed, plaintiff could (1) upon its own initiative apply for and obtain such permits, or (2) prosecute the appeals therefrom, or (3) "terminate this lease either before or after taking any or all of the above enumerated actions, by notice in writing to landlord."

■ Defendants contend that by virtue of the provision described above, there was no consideration for the contract and the contract lacked mutuality of obligation.

Defendants' position is that the contract provision described above permitted plaintiff to cancel the agreement at any time and that therefore plaintiff's promise was an illusory promise. Defendants rely heavily upon E. I. duPont deNemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224 (1933). The contractual relationship involved in that case is substantially different from that which is presented here. That case involved a sales agency agreement which did not bind one of the parties to contractual obligation for any period of time. This, the Court found, made the contract terminable at will and hence lacking in the mutuality of obligation and consideration required for an enforceable contract.

Here, plaintiff's power to terminate was not at will. Termination is subject to the existence of either of the following conditions:

(1) "If such licenses, permits and authorizations are not obtained, transferred and delivered to tenant in manner and form acceptable to tenant within a reasonable time", or

(2) "If after any or all have been obtained, appeals for other proceedings have been commenced or notice thereof filed".

Plaintiff might have exercised its termination power at any time prior to obtaining the requisite permits. However, when plaintiff obtained the permits and no appeal challenging them was commenced, the condition upon which plaintiff could exercise termination of the agreement ceased, and plaintiff was no longer in a position to terminate the agreement.[2]

It is not necessary to consider the status of the consideration under the agreement as of the time of its execution. Regardless of whether the plaintiff had a duty under the agreement to seek the requisite permits, the record indicates that plaintiff did undertake to obtain such permits, and in the case of the zoning change did pursue the matter at the legislative stage and in the Superior Court to the end that it did obtain the permits. Defendants do not contend that plaintiff failed to pursue these matters with diligence. When plaintiff did obtain the permits and notified defendants of that fact, the preliminary conditions of the agreement had been met and the contractual obligations of the parties became firm.

■ Where a promise is made by one party under circumstances reasonably expected to induce substantial action by the other party and the other party takes that action in reliance upon the promise, it then becomes binding even though the promise was gratuitous when made. Metropolitan Convoy Corp. v. Chrysler Corp., Del.Supr.,

---

1. Collectively referred to herein as "permits".

2. Defendants concede that the requirement that the permits be satisfactory to plaintiff does not cause the agreement to lack mutuality. Cf. Sun Oil Co. v. Traylor, 407 Pa.

237, 180 A.2d 235 (1962); American Oil Co. v. Carey, E.D.Mich., 246 F.Supp. 773 (1965); Mattei v. Hopper, 51 Cal.2d 119, 330 P.2d 625 (1958); 1 Corbin on Contracts, 659, § 149; 3 A ibid., 83–84, § 644.

208 A.2d 519 (1965); Chrysler Corp. v. Quimby, Del.Supr., 1 Storey 264, 144 A.2d 123 (1958); 1A Corbin on Contracts, p. 232–235, § 204, p. 248, § 205. Here, even if the agreement be treated as a gratuitous promise by defendants at the outset, the promise was transformed into a binding promise when the permits were obtained and defendants were notified in February, 1972.

■ Defendants undertook to cancel the agreement in November, 1971. Defendants contend that their promise retained its gratuitous status in November, 1971 and, therefore, they were at liberty to withdraw their promise at that time. This argument overlooks the fact that plaintiff had been pursuing its efforts to obtain the permits for many months and had expended much time, effort and money. That this effort had progressed far toward fruition is evidenced by the fact that the permits were obtained within three months thereafter. It is admitted that defendants were aware of those efforts. These facts created an estoppel which prevented defendants from cancelling the agreement. Restatement of the Law of Contracts, § 90. Defendants' offer to reimburse plaintiff for its expenditures could not nullify their estoppel.

■ Defendants further contend that another paragraph of the agreement gives plaintiff the unqualified right to terminate the agreement at any time throughout the entire lease period. The language upon which defendants found this argument reads as follows:

"If during any term of this lease any license, permit or other authorization, referred to in paragraph 3 or which are hereafter required, shall be cancelled, abridged or revoked, or if renewal thereof can not be obtained, or if Tenant is prevented by operation of law, governmental action, injunction, acts of God, acts of enemies or other causes beyond its control from using the premises as an automotive service station of type, equipment, signage, layout and capacity desired by Tenant or for continued use for the storage and sale of petroleum and other products to be sold at the premises, Tenant shall have the right to terminate this lease on not less than thirty (30) days notice to Landlord. If any governmental unit or person acting under governmental authority shall commence any change in any street, road or highway now serving the premises and if such change when completed would substantially diminish the value of the leasehold, then Tenant may, at any time after such commencement of change, terminate this lease on not less than thirty (30) days notice to Landlord."

Here again, the right of termination is subject to enumerated conditions. The conditions are: cancellation, revocation or non-renewal of any license, permit or authorization, being prevented "by operation of law, governmental action, injunction, act of God, acts of enemies or other causes beyond [tenant's] control" from using the premises as an automobile service station" of type, equipment, signage, layout and capacity desired by tenant" or for storage and sale of petroleum and other products, or change in any street, road or highway serving the premises if the change would substantially diminish the value of the leasehold. Each of the enumerated conditions is a contingency beyond plaintiff's control, in general being dependent upon government action. The presence of such conditions does not render the lease terminable at the will of plaintiff. Only in describing the type, equipment, signage, layout and capacity of the automobile service station does the lease contain the qualifying wording, "desired by tenant". This language is circumscribed by a test of reasonableness.

■ Defendants further argue that the petroleum industry is presently beset by limitations which are the result of governmental action and that, therefore, if specific performance is granted, plaintiff would be in a position to terminate the lease at any time. Insofar as the validity of the

contract is concerned, plaintiff undertook to make the lease period operative in February, 1972 and the conditions which might make the termination power operative have arisen since then. As of that time the lease was binding upon the parties. Moreover, we review the case on the record as it existed below.

The judgment below is affirmed.