# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SIMON PROPERTY GROUP, L.P., on behalf of itself and its affiliated landlord entities, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ) C.A. No. N21C-01-258 MMJ CCLD |
| BRIGHTON COLLECTIBLES, LLC, | ) ) ) | |
| Defendant. | ) | |

Submitted: September 30, 2021
Decided: December 21, 2021

Plaintiff's/Counterclaim Defendant's Motion to Dismiss Counterclaim Count II
**GRANTED**

Plaintiff's/Counterclaim Defendant's to Dismiss Counterclaim Count I
**DENIED**

Plaintiff's/Counterclaim Defendant's to Dismiss Counterclaim Count III
**DENIED**

Plaintiff's/Counterclaim Defendant's  Motion to Strike Defenses
**GRANTED IN PART, DENIED IN PART**

1

## OPINION

Timothy R. Dudderar, Esq. (Argued), Jesse L. Noa, Esq., Carla M. Jones, Esq., Potter Anderson & Corroon, LLP, Wilmington, Delaware, *Attorneys for Plaintiff Simon Property Group, L.P.*

P. Clarkson Collins, Jr., Esq., Patricia A. Winston, Esq., Kirsten Zeberkiewicz, Esq., (Argued), Kuhu Parasrampuria, Esq., Morris James, Wilmington, Delaware, *Attorneys for Defendant Brighton Collectibles, LLC*

**JOHNSTON, J.**

### FACTUAL AND PROCEDURAL CONTEXT

This case is one of a growing body of litigation stemming from leasing arrangements disrupted by the Covid-19 pandemic.

The landlord is Simon Property Group, L.P. ("Simon"), a Delaware limited partnership. Simon is the principal operating partnership for Simon Property Group Inc., a publicly-held Delaware corporation. The tenants are part of Brighton Collectibles, LLC ("Brighton"), a Delaware limited liability company.

Simon owns and operates retail properties throughout the United States. Brighton manufactures and sells specialty accessories. Brighton is a tenant at multiple properties owned or operated by Simon and its affiliates. This action involves 38 lease agreements ("Lease(s)") between Brighton and its respective Simon Landlords. The Leases were entered into between November 2010 and January 2019.

Each Lease requires Brighton to timely pay Minimum Rent, Percentage Rent, Additional Rent, and other charges. The majority of the Leases also contain a close variation of the following quiet enjoyment provisions:

> Section 23.1. Landlord's Covenant. If Tenant pays the rents and other amounts herein provided, observes and performs all the covenants, terms and conditions hereof, Tenant shall peaceably and quietly hold and enjoy the Premises for the Lease Term without interruption by Landlord or any person or persons claiming by, through or under Landlord, subject, nevertheless, to the terms and conditions of this Lease.

> 15.07 QUIET ENJOYMENT. Landlord covenants that Tenant, on paying the Fixed Rent and Additional Rent and performing all of Tenant's obligations under this Lease, shall peacefully and quietly have, hold and enjoy the Demised Premises, the Common Areas and the appurtenances throughout the Term without hindrance, ejection or molestation by any person lawfully claiming under Landlord, subject to the terms and provisions of this Lease.

The Leases also contain a *force majeure* provision, either the same as or similar to the following:

> If either party hereto shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure material, failure of power, **restrictive governmental laws or regulations**, riots, insurrection, war, environmental remediation work whether ordered by any governmental body or voluntarily initiated or **other reason of a like nature not the fault of the party delayed in performing work or doing acts required under this Lease**, the period for the performance of any such act shall be extended for a period equivalent to the period of such delay. Notwithstanding the foregoing, the provisions of this Section 24.5 shall at no time operate to excuse Tenant from the obligation to open for business on the Commencement Date, except in the event of an industry wide strike, adverse weather, acts of God or inability to timely procure labor and/or materials as a result of any such events, nor any obligations for payment of Minimum Annual Rent, Percentage Rent, additional

3

rent or any other payments required by the terms of this Lease when the same are due, and all such amounts shall be paid when due.

(emphasis added). Specifically, each *force majeure* provision includes language regarding "restrictive governmental laws or regulations" and "other reason of a like nature not the fault of the party delayed in performing work."

In March 2020, state and local governments implemented numerous orders and guidelines in response to the outbreak of COVID-19 in the United States. These guidelines included both the closure of non-essential businesses and restrictions on business practices. On March 18, 2020, Simon announced that its shopping centers would be closing due to the outbreak of COVID-19. All closures were effective the same day. The closing announcement included shopping centers that also housed Brighton retail stores.

Multiple leases between Simon and Brighton—including those at issue— were approaching expiration in late 2020 and early 2021. As some restrictions were lifted, Brighton considered the economic feasibility of reopening stores.

In June 2020, there was a discussion between Brighton and Simon regarding the reopening and operation of Simons' shopping centers. Brighton alleges that that John Rulli ("Rulli"), Chief Operating Officer of Simon, offered an oral modification ("Oral Modification") to the relevant Leases. The alleged modification permitted Brighton to make rent payments as a percentage of its sales, instead of rent payments at a fixed amount.

4

Brighton specifically alleges that representatives of Simon and Brighton agreed to the Oral Modification of the Leases that allowed Brighton to: (1) abate its rent payments in full for April 2020 through June 2020; (2) pay fifteen percent of its sales as rent for July 2020 through October 2020; and (3) beginning in November 2020, resume rent payments pursuant to the Leases. Some of the Leases expired in November 2020. Brighton continued to operate those respective locations in accordance with the Oral Modification.

On January 29, 2021, Simon filed this Complaint on behalf of itself and as assignee of its various landlord entities, asserting a claim for breach of contract. On April 12, 2021, Brighton filed a Motion to Dismiss on the basis of *forum non conveniens*. The Court denied the Motion on May 26, 2021. On June 10, 2021, Brighton filed its Answer, Counterclaims, and additional defenses. Counterclaim I seeks Declaratory Judgement based on the alleged Oral Modification. Counterclaim II seeks Declaratory Judgement based on several causes of action, including *force majeure*. Counterclaim III seeks relief based on Fraudulent Inducement.

Brighton is no longer relying on *force majeure* in Counterclaim II. The remaining claims include frustration of purpose, impracticability, impossibility, and quiet enjoyment.

## MOTION TO DISMISS AND MOTION TO STRIKE STANDARDS

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[1]  The Court must accept as true all well-pleaded allegations.[2]  Every reasonable factual inference will be drawn in the non-moving party's favor.[3]  If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[4]

Superior Court Civil Rule 12(f) permits the Court to strike "any insufficient defense" or "redundant, immaterial, impertinent or scandalous matter."[5]  The movant must show "clearly and without doubt that the matter sought to be stricken has no bearing on the ... litigation."[6]  Because motions to strike are disfavored in Delaware, they are "granted sparingly" and only where "clearly warranted, with [any] doubt ... resolved in favor of the pleadings."[7]

## ANALYSIS

### *Oral Modification – Counterclaim Count 1*

Section 24.3 of the Briarwood, LLC Lease provides:

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del.).
[2] *Id.*
[3] *Wilmington Sav. Fund. Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del.)).
[4] *Spence*, 396 A.2d at 968.
[5] Super. Ct. Civil R. 12(f).
[6] *In re Estate of Cornelius*, 2002 WL 1732374, at *4 (Del. Ch.).
[7] *O'Neill v. AFS Hldgs., LLC*, 2014 WL 626031, at *5 (Del. Super.).

There are no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between Landlord and Tenant other than herein set forth. **Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless in writing and signed by them.** Tenant acknowledges that it has independently investigated the potential for the success of its operations in the Center and has not relied upon any inducements or representations on the part of Landlord or Landlord's representatives, other than those contained in the Lease. Tenant also acknowledges and agrees that, to the extent any projections, materials or discussions have related to Tenant's projected or likely sales volume, customer traffic or profitability, Tenant understands that any and all such projections, materials and discussions are based solely upon Landlord's experiences at other properties or upon standardized marketing studies, and that such projections, materials and discussions shall not be construed as a promise or guarantee that Tenant will realize the same or similar results.

All the Leases at issue contain a similar clause. The Leases explicitly state that they cannot be modified except by written agreement. It is undisputed that there was no subsequent written agreement between the parties.

In Delaware, "contract provisions deeming oral modifications unenforceable can be waived orally…."[8]

While integration clauses proscribe the Court's consideration of all oral and written communications and agreements that occurred prior to the agreement when interpreting it, they do nothing to prevent the Court's consideration of subsequent promises, communications, or modifications to the express agreement and therefore do not bar a finding of waiver, estoppel, or acquiescence.[9]

---

[8] *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1229 (Del. Ch.).
[9] *In re Coinmint, LLC*, 2021 WL 3560831, at *19 (Del. Ch.).

Part performance may prove modification or waiver of an agreement. "[A] written agreement between contracting parties, despite its terms, is not necessarily only to be amended by formal written agreement…. [P]arties have a right to renounce or amend the agreement in any way they see fit and by any mode of expression they see fit. They may, by their conduct, substitute a new oral contract without a formal abrogation of the written agreement."[10]

Oral modifications to a contract may be demonstrated by course of conduct. There must be a clear intention to alter the express terms. An oral modification "must be of such specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document."[11]

> In order to recognize the oral modification, the Court must take defendants at their word, despite plaintiffs' denial of any alteration…. [T]he Court must first rule out the possibility that the asserting party has alleged an oral modification in an attempt to unilaterally alter a pre-existing, but unfavorable, agreement…. [C]ourts have established a high evidentiary burden for parties asserting such changes…. These [oral modifications] must be proven with "specificity and directness."[12]

Brighton states that in June 2020, Jerry Kohl, President of Brighton, and Simon's Representative, Rulli, discussed the reopening of Simon shopping centers. Brighton alleges that the subject matter of the conversation involved an offer to modify the existing written agreement. Brighton states that the discussion

---

[10] *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del.).
[11] *Durig v. Woodbridge Bd. of Educ.,* 1992 WL 423926, at *1 (Del. Super.)(quoting *Reeder v. Sanford Sch., Inc.,* 397 A.2d 139, 141 (Del. Super.)).
[12] *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1230 (Del. Ch.).

8

concerned a revised payment arrangement, allowing Brighton to make rent payments as a percentage, rather than a fixed amount. Brighton contends that Rulli was advised of Brighton's inability to operate the relevant stores without rent relief from Simon.

Brighton further alleges that a subsequent call between Simon representatives and Brighton representatives resulted in the official Oral Modification. Brighton states that the new term of the Leases allowed Brighton to reopen stores and: (1) abate its rent payments in full for April 2020 through June 2020; (2) pay fifteen percent of its sales as rent for July 2020 through October 2020; and (3) beginning in November 2020, resume rent payments pursuant to the Leases.

Brighton also alleges it fully performed its obligations under the alleged Oral Modifications. Brighton reopened its retail stores, paid fifteen percent (15%) of its sales as rent for July 2020 through October 2020 and, in November 2020, Brighton resumed full rent payments under the Leases. Brighton argues that Simon accepted and did not reject the modified rent payments as they were made. Brighton also claims that retail stores remained open in reliance on the alleged Oral Modification, even though the Leases were about to expire.

The Court takes the facts in the light most favorable to Brighton, along with all reasonable inferences. The Court finds that Brighton has adequately presented

a *prima facie* claim of oral modification to the express agreement between the parties.

The Court further finds that numerous questions of fact prevent dismissal at this stage of the proceedings. Most obviously, the parties dispute the content of the discussions between Simon and Brighton. Additionally, factual questions concern whether there was a waiver of the contractual prohibition against oral modification.

There are also sufficient questions of fact concerning the parties' course of conduct that prevent dismissal. These include, but are not limited to:

(1) Why were the stores closed—were they closed by government directive or Simon's unilateral decision?
(2) Was Brighton required to reopen stores?
(3) When was Brighton required to open?
(4) Do the facts vary from store to store?

In *Pepsi–Cola Bottling Co. of Asbury Park v. Pepsico, Inc,*[13] the Supreme Court found that continuous action can be evidence of the parties' course of conduct. Thus, the question remains—whether the parties' conduct was sufficiently continuous so as to support a cause of action based on the parties' course of conduct.

---

[13] 297 A.2d 28 (Del.).

There are also questions of fact concerning the adequacy of consideration. Adequacy of consideration may involve factual issues.[14]

Brighton sufficiently asserts numerous allegations concerning the adequacy of consideration. Brighton alleges that in exchange for a temporary reduction in rent payments, it reopened its stores. Brighton further asserts that it advised Simon Representative, Rulli, that Brighton would not be able to afford to operate stores absent rent relief. To determine if the consideration was adequate, multiple questions of fact remain.

Brighton did not specifically use the alternative term "efficient breach" within the pleadings. However, Brighton argues it pled sufficient facts supporting its claim that the parties were aware, or should have been aware, of the possibility of efficient breach. Brighton also asserts that the stores continued to operate in detrimental reliance on the oral modification.

The Supreme Court has established that "where a promise is made by one party under circumstances reasonably expected to induce substantial action by the other party and the other party takes that action in reliance upon the promise, it

---

[14] *See Oguz v. Oguz*, 478 So. 2d 437, 440 (Fla. Dist. Ct. App. 1985)(Whether there was any valid consideration, are questions which should not be resolved on a motion to dismiss.). *See also Loveland Properties v. Ten Jays, Inc*., 567 N.E.2d 270, 275 (Ohio Ct. App. 1988)(The material allegations of the complaint are taken as admitted. Thus the defect in plaintiff's claim … (whether the consideration was legally sufficient) is cured by the allegations of the complaint because the complaint asserts that the guaranty was valid and enforceable. Thus, dismissal on basis of invalid consideration was inappropriate.).

then becomes binding even though the promise was gratuitous when made."[15]  This

Court has held:

> Promissory estoppel may arise where the party to be estopped has promised to do an act in the future, although unsupported by consideration, if it was intended that the promise be relied upon and, in fact, was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of a fraud or would result in injustice.[16]

> Promissory estoppel requires: (1) the making of a promise; (2) the

promisor's intent to action or forbearance; (3) reliance by the promisee; and

(4) injury to the promisee.[17]

The Court finds Brighton has adequately presented a *prima facie*

claim of oral modification.  Questions of fact prevent dismissal at this stage

of the proceeding.

### Statute of Frauds

This action involves leases in multiple jurisdictions.  The Statute of Frauds

varies in each of the 16 jurisdictions.  The Statute of Frauds would not apply to the

leases formulated in Ohio, Texas, Massachusetts, and Oklahoma, based on laws

within those jurisdictions.[18]

---

[15] *Wroten v. Mobil Oil Corp.*, 315 A.2d 728, 730 (Del.).

[16] *Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 318 (Del. Super.).

[17] *Id.* at 319.

[18] *Conneaut Dev., Inc. v. F.D.I.C.*, 74 F.3d 1240 (6th Cir. 1996)(Under Ohio law, "[c]ontracts that are within the Statute of Frauds may be modified orally so long as the modified terms are not themselves within the statute."); *Smith v. Hues*, 540 S.W.2d 485, 490 (Tex. Civ. App. 1976), *writ refused* NRE (Under Texas law, "If neither the portion of the written contract affected by the

12

Partial performance and estoppel are established exceptions to the Statute of Frauds. Both exceptions involve questions of fact. In *Atlantic Pier Associates, LLC v. Boardakan Restaurant Partners*,[19] the United States District Court for the Eastern District of Pennsylvania noted that "at the motion to dismiss stage, an oral modification to the written lease is not *per se* invalid."[20] The *Boardakan* court found that the plaintiffs were "entitled to discovery to prove that the conduct of the parties shows an intent to orally amend the contract."[21]

The Court finds that even in jurisdictions where the Statute of Frauds applies, the Court is unable to make the appropriate determinations of law at this stage of the proceedings. At this time, the Court is unable to apply the law of each individual jurisdiction to the allegations in this case. Many of the same issues of fact appear within the Statute of Frauds claim, as are presented by the oral modification counterclaim and related defenses.

---

subsequent modification nor the matter encompassed by the modification itself is required by the Statute of Frauds to be in writing, then the oral modification will not render the contract unenforceable."); *McKinley Investments, Inc. v. Middleborough Land, LLC*., 818 N.E.2d 627, 629 (Mass. App. Ct. 2004) (Under Massachusetts law, the court found that Statute of Frauds did not apply where the modifications included "extension of time, elimination of the tolling period, and additions to the contract price."—because in that instance they were mere substitutions of performance); *Pfeiffer v. Peppers Ref. Co.*, 173 P.2d 581, 583 (Okla. 1946)(Under Oklahoma law, the Statute of Frauds did not apply "when parties orally agree to an alteration of a written contract and such contract, as amended, is carried out this constitutes, as to such amended matters, an executed oral contract.").

[19] 647 F. Supp. 2d 474, 494 (E.D. Pa. 2009).

[20] *Id*. at 494.

[21] *Id*.

## *Force Majeure – Counterclaim Count II*

The *force majeure* clauses within the Leases at issue provide close variations of the following:

> If either party hereto shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure material, failure of power, restrictive governmental laws or regulations, riots, insurrection, war, environmental remediation work whether ordered by any governmental body or voluntarily initiated or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under this Lease, the period for the performance of any such act shall be extended for a period equivalent to the period of such delay. Notwithstanding the foregoing, the provisions of this Section 24.5 shall at no time operate to excuse Tenant from the obligation to open for business on the Commencement Date, except in the event of an industry wide strike, adverse weather, acts of God or inability to timely procure labor and/or materials as a result of any such events, nor any obligations for payment of Minimum Annual Rent, Percentage Rent, additional rent or any other payments required by the terms of this Lease when the same are due, and all such amounts shall be paid when due.

The *force majeure* clauses are very broad. However, the clauses appear to allocate risk.

Brighton has withdrawn its counterclaim and relevant defenses that the contractual *force majeure* provisions excuse its performance under the Leases. Thus, Brighton is no longer pursuing the *force majeure* claim. Brighton is left with the defenses of frustration of purpose, impossibility, impracticability, and breach of quiet enjoyment.

Plaintiff relies on *1600 Walnut Corporation v. Cole Haan Company Store*[22] for the proposition that payments required by the Leases should not be excused even if the *force majeure* clause applies. In *Cole Haan*, the court characterized the COVID-19 Pandemic ("Pandemic") and resulting government restrictions as an event under the *force majeure* clause within the *Cole Haan* lease. The *Cole Haan* lease contained a provision that requires payment of rent even if a *force majeure* event—such as COVID-19—occurs. The *Cole Haan* court held that the common law doctrines of frustration of purpose and impossibility/impracticability of performance were inapplicable because the Pandemic was considered a *force majeure* event.[23]

Plaintiff argues that the *force majeure* provision within the Leases expressly addresses and allocates the risks of a *force majeure* event to Brighton. The *force majeure clause* provides, in relevant part, that potential *force majeure* events include "restrictive governmental laws or regulations" and "other reason of a like nature not the fault of the party delayed in performing work or doing acts required under this Lease."

[22] 530 F. Supp. 3d 555 (E.D. Pa. 2021).
[23] *Id*. at 558.

The *force majeure* clause appears very broad. As a result, the parties to the Leases accepted great risk. This is not a residential adhesion contract. The parties in the action are presumed to be sophisticated parties.

Brighton further alleges that its performance was excused. Brighton argues that the potential spread of COVID-19 represented a real threat to the health and safety of Brighton's employees, customers, and the community. Brighton asserts it was impossible to perform under the Leases, as written, while safeguarding community health and safety. Brighton specifically states that restrictions from state and local government—concerning the COVID-19 pandemic—required the closure of non-essential businesses and/or the restrictions on businesses. Brighton argues that "as a result of Simon's closures, governmental orders and guidelines, and widespread public health and safety concerns, Brighton had no option but to suspend its store operations to protect the health and safety of its employees, customers and the community."

Brighton contends that Simon directed stores in certain states be closed before government required closing. Therefore, the premature closures cannot be deemed government action. Thus, the closures would not be protected under the *force majeure* provision.

The Court finds *Cole Haan* persuasive. The Leases at issue contained a broad *force majeure* provision. The COVID-19 Pandemic is not an event that

16

excuses the Plaintiff from obligations under the Leases. Therefore, the doctrines of frustration of purpose, impossibility, impracticability, and breach of quiet enjoyment cannot survive a motion to dismiss.

### *Fraudulent Inducement – Counterclaim Count III*

Delaware courts have established:

> To state a claim for common law fraud, the [plaintiff] must plead facts supporting an inference that: (1) the defendants falsely represented or omitted facts that the defendants had a duty to disclose; (2) the defendants knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendants intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.[24]

Superior Court Rule 9(b) provides: "In all averments of fraud. . .the circumstances constituting fraud…shall be stated *with particularity*."[25] The purpose of Rule 9(b) "is to apprise the adversary of the acts or omissions by which it is alleged that a duty has been violated."[26] Thus, "Delaware courts have held that to satisfy particularity under Rule 9(b) all that is required is that the complaint set forth the *time, place, and contents* of the alleged fraud, as well as the *individual accused* of committing the fraud."[27] The Court "must disregard conclusory

---

[24] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207 (Del. Ch.), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Bilett*, 931 A.2d 438 (Del.).

[25] Super. Ct. Civ. R. 9(b)(emphasis added).

[26] *Flowshare, LLC v. Geo Results, Inc.*, 2018 WL 3599810, at *3 (Del. Super.)(internal citations and quotations omitted).

[27] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *6 (Del. Super.) (internal citations and quotations omitted) (emphasis added).

allegations unsubstantiated by specific factual details that would support a rational inference that a particular defendant committed common law fraud."[28]

Brighton alleges that a discussion took place in June 2020. Brighton asserts that Simon falsely represented that if Brighton would reopen its stores—closed due to COVID-19—Simon would both (1) abate rent for April 2020 to June 2020 and (2) accept rent reduced by fifteen percent (15%) of sales for July 2020 to October 2020. Brighton further alleges Simon had no intention of performing the promise, and only wanted to induce Brighton to reopen its stores in reliance on the promise. In January 2021, Simon demanded payment pursuant to the Leases for April 2020 to October 2020.

Simon contends that Brighton failed to adequately plead that Brighton was fraudulently induced.

The Court finds that Brighton has complied with Rule 9(b) requirements. The time, place, contents, and individual accused of committing the fraud were pled. Brighton's allegations involve questions of fact at the pleading stage.

## CONCLUSION

The Court finds that the Leases contain a broad *force majeure* provision. The Court is not persuaded by the Plaintiff's argument that closures due to the

---

[28] *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144 (Del. Ch.).

COVID-19 Pandemic are outside the scope of a *force majeure* event. Thus, the doctrines of frustration of purpose, impossibility, impracticability, and breach of quiet enjoyment, cannot survive a motion to dismiss. **THEREFORE**, the Plaintiffs Motion to Dismiss Counterclaim Count II is hereby **GRANTED**.

Taking the facts in the light most favorable to the non-moving party, along with all reasonable inferences, Brighton has adequately presented a *prima facie* claim for oral modification. The Court finds that there are several questions of fact that prevent dismissal at this stage of the proceedings. **THEREFORE**, the Plaintiffs Motion to Dismiss Counterclaim Count I is hereby **DENIED**.

The Court finds that Brighton has met the particularity requirements under Superior Court Rule 9(b). The claim for fraudulent inducement involves question of fact at the pleading stage. **THEREFORE**, the Plaintiffs Motion to Dismiss Counterclaim Count III is hereby **DENIED**.

The Court finds that all defenses directly related to Counterclaim II should be stricken. These are:

(1) Governmental orders imposing capacity and/or hour restrictions (Third Defense);
(2) Contractual operating requirements (Fourth defense);
(3) *Force majeure* (Sixth Defense); and
(4) Frustration of purpose and/or impracticability (Seventh Defense)
(5) Simon's alleged reduction of hours of operation and capacity of its shopping centers (Eighth Defense);
(6) Simon's actions or the actions of its landlord affiliated entities (Ninth Defense);
(7) The covenant of quiet enjoyment (Tenth Defense);

19

(8) The closing of Simon's shopping centers (Twelfth Defense); and

(9) Simon's alleged bad faith conduct and/or unclean hands and/or negligence, fraud, or misrepresentation (Thirteenth Defense)

The Motion to Strike the remaining defenses unrelated to Counterclaim

Count II is hereby **DENIED. THEREFORE**, the Plaintiffs Motion to

Strike Defenses is hereby **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

_/s/ Mary M. Johnston_
The Honorable Mary M. Johnston

20