**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

BONNIE W. DAVID
MASTER IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: February 16, 2023
Final Report: March 21, 2023

Stephen A. Spence, Esquire
Meluney Alleman & Spence, LLC
1143 Savannah Rd., Suite 3-A
Lewes, DE 19958

Daniel C. Herr, Esquire
Law Office of Daniel C. Herr LLC
1225 N. King St., Suite 1000
Wilmington, DE 19801

RE: *Schell Brothers, LLC v. Pickard*,
C.A. No. 2022-0642-BWD

Dear Counsel:

This final report addresses Respondents' Motion to Dismiss Petitioners'

Amended Petition Pursuant to Rule 12(b)(6) (the "Motion to Dismiss").

Through this action, Petitioners Schell Brothers, LLC ("Schell Brothers") and

Reddenwood II, LLC ("Reddenwood") seek to enforce an addendum to a purchase

agreement through which Respondents Shawn and Lori Pickard agreed to purchase,

and Petitioners agreed to sell, a new construction home. The addendum entitled

Pickard, as a Schell Brothers employee, to an employee discount, which enabled

Respondents to purchase the new home "at cost," representing a substantial discount

to the home's market value. But it also required Respondents to repay the employee

discount if Pickard did not remain employed by Schell Brothers for three years

following the issuance of the home's certificate of occupancy. According to the petition, twenty months after the certificate of occupancy was issued, Schell Brothers terminated Pickard for using the company credit card to make unauthorized personal expenditures. Respondents refused to repay the employee discount, and this litigation ensued. Respondents now seek dismissal on the grounds that the addendum governing the employee discount is "illusory" and not supported by valid consideration.

For the reasons set forth below, I find that the purchase agreement and the addendum are part of the same integrated agreement, are not illusory and are supported by consideration. I also conclude that the addendum, standing alone, is not illusory and is supported by consideration. I therefore recommend that the Motion to Dismiss be denied.

## I.    FACTUAL BACKGROUND[1]

### A. Schell Brothers Offers the Pickards an Employee Discount on a New Construction Home.

Petitioner Schell Brothers, a Delaware limited liability company, is a homebuilding company based in Rehoboth Beach, Delaware. Am. Pet. ¶ 1.

---

[1] The following facts are taken from the Amended Verified Petition and the agreements incorporated by reference therein. *See* Am. Verified Pet., Dkt. No. 12 [hereinafter, "Am. Pet."].

Petitioner Reddenwood, a Delaware limited liability company and wholly-owned subsidiary of Schell Brothers, is the developer, declarant, and owner of the Estates at Reddenwood Community, a residential community in Milton, Delaware.

As a tool to recruit and retain employees, Schell Brothers offers employees an "Employee Discount" towards the purchase of a new construction home. After the Employee Discount is applied, Schell Brothers employees pay only "the costs incurred by Schell in 'the construction of a home, including all materials, labor, overhead, carry costs, fees, permits, closing costs, anticipated warranty costs, or any other costs specific to the [construction of the residential improvement located on the Property],'" representing a substantial discount to the home's market value. Am. Pet. ¶ 8.

In July 2019, Schell Brothers hired Respondent Shawn D. Pickard as a pilot for its corporate aircraft. Schell Brothers offered Pickard, as a new employee, the opportunity to apply the Employee Discount toward the purchase of a new construction home.

### B. The Purchase Agreement

On July 1, 2019, Pickard and his wife, Respondent Lori D. Pickard (together, the "Pickards"), entered into a Delaware Purchase Agreement (the "Purchase Agreement") with Reddenwood, pursuant to which the Pickards agreed to purchase,

and Reddenwood agreed to sell, a new construction home in the Estates at Reddenwood Community (the "Property"). The Purchase Agreement identifies a "Base Price" of $454,900, a "Home Site Premium" of $25,000, and a "Selections Estimate" of $200,567, offset by a "Base/Option Discount" of $180,170, for a total purchase price of $500,297. *See* Am. Verified Pet., Ex. A at ¶ 1, Dkt. No. 12 [hereinafter, "Purchase Agreement"].

The Purchase Agreement contains a choice of law provision selecting Delaware as the governing law. *Id.* ¶ 21. The Purchase Agreement further states that "[i]f any part of this Agreement is deemed illegal or unenforceable, the rest of the Agreement will, at Seller's option, remain in full force and effect, or in the alternative, Seller may cancel this Agreement and refund all monies paid to Seller by Buyer and both Seller and Buyer will have no further rights, obligations, or liabilities to each other at law or equity." *Id*.

The Purchase Agreement also contains an integration clause providing that "[t]his Agreement, together with any addenda checked as 'yes' below, collectively supersede any and all prior understandings and agreements between Buyer and Seller and constitutes the entire agreement between them and no representations, warranties, conditions, or statements (oral or written), not contained herein shall be considered a part hereof." *Id*. ¶ 19. The same paragraph lists fifteen separate

addenda, ten of which are checked as applicable and five of which are left unchecked. The applicable addenda include a "Selections Estimate," an "Acknowledgement of Community Documents," an "Acknowledgement of Investment Analysis," a "Radon Disclosure," "Signed Site Plans," a "Seller's Disclosure," a "Setting Expectations Addendum," a "Tree Clearing Addendum," a "Miscellaneous Addendum," and a "Deposit Requirement." *Id*.

### C. The Employee Addendum

Contemporaneous with,[2] and as "an integral part of,"[3] the Purchase Agreement, Reddenwood and the Pickards executed an Addendum to Purchase Agreement (the "Employee Addendum"). *See* Am. Verified Pet., Ex. B, Dkt. No. 12 [hereinafter, "Employee Addendum"]. The Employee Addendum sets forth eligibility requirements for receiving the Employee Discount, which is defined as "any discounts reflected in the Purchase Agreement, any addendums to the Purchase Agreement, and any Change Orders." *Id*. ¶ 5.

---

[2] The Pickards signed both the Purchase Agreement and the Employee Addendum on June 27, 2019. Reddenwood signed both the Purchase Agreement and the Employee Addendum on July 1, 2019.

[3] Employee Addendum at 1.

Specifically, the Employee Addendum states that "[t]o be eligible for the 'Employee Discount' . . . Employee/Buyer must use the Home as his/her primary residence and the Employee/Buyer should meet all the requirements outlined in the Schell Brothers Team Member Handbook, a copy of which is attached hereto as Exhibit A." *Id.* (emphasis added). Additionally, the Employee Addendum explains that "[a] major purpose of the Employee Discount being offered to Employee/Buyer in this Addendum and the Purchase Agreement is the retention of Employee/Buyer," and therefore offers the Employee Discount "[i]n consideration of (i) Employee/Buyer ***continuously owning the Home for 3 years from the date a certificate of occupancy is granted*** for the Home, and (ii) Employee/Buyer ***remaining employed by Schell Brothers for 3 years from the date a certificate of occupancy is granted*** for the Home . . . ." *Id.* ¶ 6 (emphasis added).

The Employee Addendum states that, "[s]hould Employee/Buyer voluntarily cease employment with Schell Brothers or be terminated within 3 years of the date of a certificate of occupancy is issued for the Home," Schell Brothers is entitled to reimbursement of the Employee Discount. *Id.* ¶ 7. The Employee Addendum further provides:

> In the event that Employee/Buyer does not reimburse Schell Brothers the full amount of the Employee Discount within 30 days, ***Employee/Buyer agrees to put the Home on the market for sale within***

**60 days** of the date Employee/Buyer ceases to be employed with Schell Brothers. Employee/Buyer shall notify Schell Brothers 15 days prior to listing or otherwise offering the Home for Sale. **Schell Brothers has the first option to purchase the Home** from the Employee/Buyer at the original cost calculated as the total "Sales Price" of the Home and/or lot as shown on the HUD1/ALTA documents. Should Schell Brothers choose not to exercise its right, Employee/Buyer shall notify Schell Brothers of the date on which the Home is listed or otherwise offered for sale. Employee/Buyer shall provide Schell Brothers with the ratified agreement of sale and **use the proceeds of the sale to reimburse Schell Brothers the full amount of the Employee Discount** within 30 days of the date of the sale. If the proceeds from the sale of the Home are insufficient to fully reimburse Schell Brothers for the Employee Discount, Employee/Buyer shall still be obligated to reimburse Schell Brothers for the difference between the full amount of the Employee Discount and the amount provided to Schell Brothers from the sale of the Home.

*Id*. (emphasis added).

### D. The Change Orders

In the months following execution of the Purchase Agreement and the Employee Addendum, on December 9, 2019, January 2, 2020, March 20, 2020, and March 31, 2020, the Pickards and Reddenwood entered into four change orders, which resulted in a final purchase price of $515,444, reflecting a total Employee Discount of $237,812. *See* Am. Verified Pet., Ex. J, Dkt. No. 12.

### E. Pickard is Terminated from Schell Brothers.

A certificate of occupancy was issued for the Pickards' new home on May 28, 2020. Less than three years later, on January 24, 2022, Schell Brothers terminated

Pickard's employment after it "discovered that Pickard had grossly misused the company credit card for his personal expenses and failed in the performance of his employee responsibilities." Am. Pet. ¶ 21. Specifically, the Amended Petition alleges that Pickard was terminated after he failed to provide proper documentation to account for tens of thousands of dollars in charges made with his company credit card, which was intended to be used only for authorized business purposes, but was instead used to purchase personal items such as speakers, a truck bed tent, tires for Pickard's personal vehicle, subscriptions for streaming entertainment services and other items without an authorized business purpose. Pickard confessed to Schell Brothers that he "really messed up," "got caught up in a moment and bought [certain items] for [his] own use," and "really did plan on going back and marking [the expenses] personal but [he] didn't" because he "was over extended that month and then it just got pushed to the way side [sic] and [he] never went back and fixed it." *Id*. ¶ 25.

Following Pickard's termination, Schell Brothers notified Respondents that, pursuant to the Employee Addendum, the Pickards were required to reimburse Schell Brothers for the full amount of the Employee Discount within thirty days of termination or put the Property on the market within sixty days of termination. When the Pickards refused to do so, Petitioners initiated this litigation, seeking, among

other things, a declaration that Respondents breached the Employee Addendum; specific performance of the Employee Addendum by requiring Respondents to list the Property for sale and remit the sale proceeds; and an equitable lien on the Property in the amount of the Employee Discount.

## II.     ANALYSIS

Respondents have moved to dismiss the Amended Petition under Court of Chancery Rule 12(b)(6) to failure to state a claim upon which relief may be granted. When reviewing a motion to dismiss under Court of Chancery Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id*. at 537. "[T]he threshold for the showing a plaintiff must make to survive a motion to dismiss is low." *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).

The Amended Petition asserts a single cause of action for breach of the Employee Addendum.[4]  Respondents offer one theory in support of dismissal—that the Purchase Agreement and the Employee Addendum must be viewed as separate agreements, and the Employee Addendum, standing alone, is an "illusory" contract unsupported by consideration.  According to Respondents, the Employee Addendum lacks "mutuality of obligation" because it permits Schell Brothers to unilaterally revoke the Employee Discount by terminating Pickard's employment.

For the reasons set forth below, I conclude that the Purchase Agreement and the Employee Addendum are part of the same integrated agreement, are not illusory and are supported by consideration.  Moreover, even standing on its own, the Employee Addendum is not illusory and is supported by consideration.  Accordingly, the Motion to Dismiss should be denied.

    **1. The Purchase Agreement and Employee Addendum Are Part of the Same Integrated Agreement, Are Not Illusory And Are Supported by Consideration.**

"[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties

---

[4] The Amended Petition contains two counts: Count I, seeking specific performance as a remedy for breach of the Employee Addendum, and Count II, separately alleging breach of the Employee Addendum.

exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). When analyzing the sufficiency of the consideration exchanged in a contract, Delaware courts "limit our inquiry into consideration to its existence and not whether it is fair or adequate." *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *9 (Del. Ch. Mar. 27, 2014).

Respondents' challenge to the Employee Addendum as "illusory" rests on the premise that the addendum must be analyzed in a vacuum. According to Respondents, "the Purchase Agreement and the [Employee] Addendum are two separate documents," so the consideration exchanged under the Purchase Agreement cannot support the Employee Addendum. Opening Br. in Supp. of Resp'ts' Mot. to Dismiss Pet'rs' Am. Pet. Pursuant to R. 12(b)(6) at 6, Dkt. No. 16 [hereinafter, "OB"]. Respondents' argument fails because "[a]s a matter of black letter law, all writings that are part of the same transaction are interpreted together." *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 2021 WL 3630298, at *9 (Del. Ch. Aug. 17, 2021); *see also Comerica Bank v. Glob. Payments Direct, Inc.*, 2014 WL 3567610, at *7 (Del. Ch. July 21, 2014) (holding that an LLC agreement and a service agreement should be read as one contract where "the integration clause in the LLC Agreement acknowledge[d] the inter-relatedness of these two agreements (and other agreements) the parties entered simultaneously," explaining that "contemporaneous

contracts between the same parties concerning the same subject matter should be read together as one contract").[5]

The Purchase Agreement and the Employee Addendum were signed contemporaneously. The Purchase Agreement's integration clause provides that the Purchase Agreement and applicable addenda—including the Employee Addendum[6]—together "constitute[] the entire agreement between" the parties. Purchase Agreement ¶ 19. And the Employee Addendum further confirms that it is "an integral part of the Purchase Agreement." Employee Addendum at 1.

To avoid this result, Respondents contend that the Employee Addendum "modif[ies] and amend[s]" the Purchase Agreement. OB at 6. This too fails.

---

[5] Respondents argue that the Purchase Agreement and the Employee Addendum should not be read together because the Employee Addendum "is not a valid contract in the first instance." Reply Br. in Further Supp. of Resp'ts' Mot. to Dismiss Pet'rs' Am. Pet. Pursuant to R. 12(b)(6) at 4, Dkt. No. 21 [hereinafter, "RB"]. Respondents' reasoning is circular and undermined by many cases holding that not only "contracts," but "*all writings* that are part of the same transaction," must be interpreted together. *Fla. Chem. Co., LLC*, 2021 WL 3630298, at *9 (emphasis added); *see also, e.g.*, *Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 927 n.61 (Del. 2017), *as revised* (June 28, 2017) (citing the Restatement (Second) of Contracts § 202 for the proposition that "*all writings* that are part of the same transaction are interpreted together") (emphasis added); *Trexler v. Billingsley*, 166 A.3d 101, 101 n.21 (Del. 2017) (same); *Narayanan v. Sutherland Glob. Hldgs. Inc.*, 2016 WL 3682617, at *10 n.77 (Del. Ch. July 5, 2016) (same).

[6] The applicable addenda listed in Paragraph 19 include, among others, a "Miscellaneous Addendum." At this stage, it is at least reasonably conceivable that "Miscellaneous Addendum" refers to the Employee Addendum.

Although "'an amendment to a contract requires consideration,'"[7] the Employee Addendum is not an "amendment"—it is "an integral part" of "the entire agreement between" the parties, executed at the same time the Purchase Agreement was signed. Unsurprisingly, both cases on which Respondents rely for this argument address amendments that, unlike the Employee Addendum here, were executed months or years *after* the initial agreement was signed.[8] Here, the Purchase Agreement and the Employee Addendum were executed together and must be analyzed together.

Because Respondents seek to retain the benefits received under the Purchase Agreement,[9] they concede that the Purchase Agreement is not illusory and is supported by valid consideration. Considered together with the Employee Addendum, the entire contract is plainly supported by consideration. A contract is supported by consideration, even where a promisor reserves a choice of alternative

---

[7] OB at 6 (quoting *Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219 (Del. Ch. 2000)).

[8] *See Continental Ins. Co.*, 750 A.2d at 1232-33 (finding parties did not orally modify an LLC agreement approximately a decade after the LLC agreement was executed, and even if they had, the alleged amendment was not supported by consideration); *13 N. Enters., Inc. v. Bruner*, 1992 WL 187630, at *1 (Del. Ch. July 8, 1992) (finding lease amendment executed several months after initial lease was signed was supported by consideration).

[9] As noted above, Schell Brothers may cancel the Purchase Agreement if any part of that agreement is deemed illegal or unenforceable. Purchase Agreement ¶ 21 ("If any part of this Agreement is deemed illegal or unenforceable . . . Seller may cancel this Agreement . . . .").

performance, if "each of the alternative performances would have been consideration if it alone had been bargained for." Restatement (Second) of Contracts § 77 (1981). Comment (b) to the Restatement explains that "[a] promise in the alternative may be made because each of the alternative performances is the object of desire to the promisee. . . . [T]he promise is consideration if it cannot be kept without some action or forbearance which would be consideration if it alone were bargained for." *Id*. cmt. b.

Through the Purchase Agreement and the Employee Addendum, Petitioners made two alternative promises: (1) Petitioners agreed to sell the Property to Respondents for a discounted purchase price ($515,444 after change orders) and not to seek repayment of the Employee Discount ($237,812) if Pickard remained employed by Schell Brothers for three years; or (2) if Pickard did not remain employed by Schell Brothers for three years, Petitioners still agreed to sell the Property, but reserved a right to repayment of the Employee Discount (reflecting an effective purchase price of $753,256). Under either alternative, Petitioners were bound to sell, and Respondents were bound to purchase, the Property at one of two prices ($515,444 or $753,256).

Because the Purchase Agreement and the Employee Addendum together are not illusory and are supported by consideration, the Motion to Dismiss must be denied.

### 2. The Employee Addendum Is Not Illusory And Is Supported By Consideration.

Because the Purchase Agreement and the Employee Addendum together are not illusory, the Motion to Dismiss must be denied. Alternatively, the Motion to Dismiss also must be denied because, even standing alone, the Employee Addendum is not "illusory" and is independently supported by consideration.

Respondents maintain that the Employee Addendum is an "illusory" promise. Citing *Mobil Oil Corp. v. Wroten* and similar cases,[10] Respondents explain that "[w]here the plaintiff's promise is a mere illusion, that is, where his promise exists in form only but not in substance, then it follows necessarily that there is no consideration to support the defendant's promise, and thus no enforceable contract." *Mobil Oil Corp. v. Wroten*, 303 A.2d 698, 701 (Del. Ch. 1973). According to

---

[10] Respondents also rely on *Carey's Home Construction, LLC v. Estate of Myers*, 2014 WL 1724835, at *5-6 (Del. Super. Ct. Apr. 16, 2014), in which the Superior Court upheld an escalator clause in a construction contract as not illusory, and *SARN Energy LLC v. Tatra Defense Vehicle a.s.*, 2018 WL 5733385, at *5 (Del. Super. Ct. Oct. 31, 2018), in which the Superior Court held that an agreement "d[id] not lack consideration" where it was supported by one party's promise to use best efforts to accomplish the agreement.

Respondents, Petitioners were not bound by the contract, but were instead given "a three-year 'out' to claw back" the Employee Discount at their sole discretion. OB at 8. Petitioners counter that this Court previously rejected a similar "illusory" argument under factually analogous circumstances, and that, in any event, the Employee Addendum is not "illusory" because the implied covenant of good faith and fair dealing limited Petitioners' ability to terminate Pickard and demand repayment of the Employee Discount. Pet'rs' Answering Br. Opposing Resp'ts' Mot. to Dismiss at 10-18, Dkt. No. 19 [hereinafter, "AB"]. Petitioners are correct on both counts.

First, Vice Chancellor Noble's decision in *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014), refutes Respondents' contention that the Employee Addendum is illusory. There, the Court analyzed restricted stock unit ("RSU") award agreements under which performance-based RSUs would vest if an employee remained employed on future dates. Like Respondents here, the defendant, a former employee of the plaintiff, argued that "because the [RSU] [a]greements would cause [defendant] to forfeit her awards if [plaintiff] terminated her, which it could do at its sole discretion and without cause because she was an at-will employee," those agreements were supported "only by illusory consideration and [we]re therefore unenforceable." *Id.* at *8. Vice Chancellor Noble rejected that

argument, concluding that the RSU agreements were not illusory because the defendant "was granted a benefit that held actual value," even if "somewhat contingent, based on certain factors such as the time period in which the units will vest and [the defendant's] likelihood of future employment." *Id*. at *9.

Respondents "respectfully disagree with Vice Chancellor Noble's *Storm* analysis," RB at 11, but fail to offer any compelling distinction that would cast doubt on its application here. Like the RSU agreements in *Newell Rubbermaid*, the Employee Addendum offered Respondents immediate value even though the full extent of that value depended on future events. For example, even if the Employee Discount were forfeited, Respondents received an interest-free loan in the amount of the Employee Discount and lower monthly mortgage payments. "[B]ecause Delaware courts 'limit our inquiry into consideration to its existence and not whether it is fair or adequate,'" I cannot conclude that such consideration was inadequate. *Newell Rubbermaid Inc.*, 2014 WL 1266827, at *9.[11]

---

[11] Vice Chancellor Noble also concluded that the RSU agreements were not illusory because the defendant's "likelihood of future employment, although perhaps not precisely knowable, [wa]s likely high in this circumstance" given the plaintiff's desire to retain her as an employee. *Newell Rubbermaid Inc*., 2014 WL 1266827, at *9. Similarly, here, the Employee Addendum provides that "[a] major purpose of the Employee Discount being offered to Employee/Buyer in this Addendum and the Purchase Agreement is the retention of Employee/Buyer." Employee Addendum ¶ 6.

Second, to the extent Petitioners' obligations under the Employee Addendum might otherwise be illusory, it is reasonably conceivable that the implied covenant of good faith and fair dealing limits Petitioners' discretion and binds them to the contract. The parties debate whether a "for cause" requirement can be read into the Employee Addendum that would prohibit Petitioners from terminating Pickard without cause and thereby improperly depriving him of the full benefit of the Employee Discount. One might expect *Respondents* to argue that the implied covenant of good faith and fair dealing prohibited Petitioners from terminating Pickard except for cause—but in this unusual posture, Respondents instead insist that nothing in the agreement restricted Petitioners from terminating Pickard at any time, for any reason. OB at 8-9.

I disagree. As comment (d) to the Restatement explains, "[a] limitation on the promisor's freedom of choice need not be stated in words. It may be an implicit term of the promise, or it may be supplied by law." Restatement (Second) of Contracts § 77 cmt. d (1981); *see also Mobil Oil Corp.*, 303 A.2d at 701 (finding agreement was not illusory because plaintiff was bound "to a good faith effort" to obtain required permits and "would be held as a matter of law to a standard of reasonableness" in determining whether permits were acceptable).

As Petitioners explain, "[t]he implied covenant of good faith and fair dealing inheres in every contract governed by Delaware law and 'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'" AB at 17 (citing *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 145-46 (Del. Ch. 2009)). Accepting the allegations of the Amended Petition as true, as I must, it is at least reasonably conceivable that the implied covenant of good faith and fair dealing prohibited Petitioners from terminating Pickard without cause in order to intentionally deprive Respondents of the benefit of their bargain under the Employee Addendum. It is also reasonably conceivable, based on the facts pled, that Petitioners terminated Pickard for cause for misappropriating the company credit card for his personal use.

Finally, Respondents argue that even if a "termination for cause" term is implied, "what is and what is not 'cause' remains undefined." RB at 14. With a back-of-the-hand to the employee handbook attached to the addendum,[12] Respondents implausibly assert that "[t]he [Employee] Addendum does not provide

---

[12] Employee Addendum ¶ 5 ("Employee/Buyer should meet all the requirements outlined in the Schell Brothers Team Member Handbook, a copy of which is attached hereto as Exhibit A.").

any guidance for determining whether a breach occurred" and must therefore be

"invalid." RB at 14. That argument is specious. "At the pleading stage, a plaintiff

need only plead facts from which a court can infer the existence of definite terms."

*Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049,

at \*10 (Del. Ch. Mar. 5, 2021). Respondents' suggestion that it is impossible to

determine if alleged theft from the company provides cause for termination strains

credulity.

Because the Employment Agreement is not illusory, and instead is supported

by consideration, the Motion to Dismiss must be denied.[13]

---

[13] Respondents also cite Vice Chancellor Zurn's recent decision in *Ainslie v. Cantor Fitzgerald, L.P.*, 2023 WL 106924 (Del. Ch. Jan. 4, 2023), which addressed a "forfeiture-for-competition" provision in a limited partnership agreement providing that upon departure from the partnership, a partner would receive payments unless he or she breached the LP agreement's restrictive covenants or engaged in competitive activity. The "competing policy interests" at play in that case—"enforcing private agreements on one hand, and disfavoring restraints of trade and allowing individuals to freely pursue their profession of choice, on the other"—are not present here. Nothing in the Employee Addendum prevents Pickard from competing with Schell Brothers or otherwise pursuing his profession as a pilot, and Respondents have not argued otherwise.

## III.  CONCLUSION

For the reasons explained above, I recommend that the Motion to Dismiss be denied.  This is a final report pursuant to Court of Chancery Rule 144.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Master in Chancery

cc:     All counsel of record (by File & ServeXpress)